JOHN GILMAN *v.* CENTRAL VERMONT RAILWAY COMPANY.

February Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, SUPR., J.

Opinion filed May 20, 1919.

*Statute Adopted from Another State—Construction—Operating Unregistered Automobile—Railroads—Grade Crossing— Standing Train—Violation of Statute—Negligence.*

The construction given a Massachusetts statute by its courts furnishes no guide to the legislative intention in adopting the same statute here, where their decisions were subsequent to the adoption here.

Operating an unregistered automobile upon a public highway in violation of G. L. 4716 does not preclude a recovery for injuries unless there is a proximate, casual connection between the violation of the statute and the injury complained of.

In an action against a railroad for injuries to an automobile caused by the automobile running into a train standing at a grade crossing, and where the automobile was not stopped before striking the train because of the greasy condition of the highway, defendant's occupation of the crossing more than five minutes in violation of G. L. 5177 was not the proximate cause of the accident.

Nor, under the circumstances, was the defendant negligent in failing to take precautions to give travelers warning that the crossing was obstructed by the train.

A verdict based upon conjecture cannot stand.

TORT FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the June Term, 1918, Orange County, *Wilson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*John W. Redmond* and *Chas. F. Black* for the defendant.

*March M. Wilson* for the plaintiff.

TAYLOR, J.   The accident out of which this action arose is unique in the annals of highway crossing accidents in this State. The action is for damage to plaintiff's automobile occasioned by running into a freight train that was standing at a grade crossing on Church Street in the village of Bethel on the line of defendant's railroad. The accident occurred about 2:45 a. m., August 30, 1917. Church Street crosses the railroad nearly at right angles, the railroad at that point running substantially north and south. The highway approaching the railroad from the west descends quite a steep hill, with buildings and banks on either side. The road is straight and the crossing visible to one approaching from the west for at least 250 feet. About 450 feet south of the crossing was a switch controlling a ''passing track'' that extended thence south. At the time in question, defendant's freight train, which was south bound, had arrived at Bethel under orders that required it to take said passing track. It consisted of a locomotive and 43 cars. The usual crossing signals were given, and, when the locomotive reached a point about a car length from said switch, it halted and a brakeman went forward to the switch, threw it, and the train moved onto the side track. There was a controversy as to the length of time the train occu-

pied the crossing, the defendant's evidence tending to show that it halted only a matter of seconds while the switch was being thrown, and the plaintiff claiming that there were circumstances tending to show that it had been there more than five minutes.

Plaintiff was driving his car from Randolph to Bethel Village. He stopped about five minutes at the head of Church Street to leave a passenger and then proceeded to the crossing. The highway he had traversed for the most part of two miles and a half from Bethel towards Randolph was near and in plain sight of defendant's track, and the head and part of Church Street were in sight thereof. His evidence tended to show that neither he nor the other occupants of the car saw or heard any train on the track that night after leaving Randolph until they reached the crossing, and that they had good opportunity both to see and hear. The night was rainy and misty, and the automobile top and wind shield were up. About 50 feet east of the track was a covered bridge over the river, which was lighted by electric lights. The bridge was undergoing repairs, and there were also lanterns on the end of the bridge towards the railroad that were visible to the plaintiff as he descended the hill towards the crossing. Plaintiff was well acquainted with the locality and the condition of the road. As plaintiff started down the hill he threw out the clutch and applied the brakes, which worked properly, and slowed the speed of the car to ten miles an hour or less. He looked and listened and saw and heard nothing. Part way down the hill he relaxed his brake somewhat to increase his speed a little, but kept his foot on the brake. When a short distance from the track he discovered the train and put on the brakes, which held; but the car, with its wheels locked, slid forward into the train, owing to the steepness of the grade and the wet and slippery condition of the road. The damage to the car was occasioned by the train starting just as the car struck it. Plaintiff saw no light at the crossing or on the train, and first discovered the presence of the train when he reached a point where the cars obstructed the light from the bridge, a distance of 15 to 20 feet from the crossing. The road had been recently oiled and was greasy. Such was the tendency of the evidence, regarded in the light most favorable to the plaintiff.

The defendant relies only on its exception to the denial of its motion for a directed verdict. The several grounds of the motion assigned in the court below may be summarized as fol-

lows: (1) The evidence shows that the plaintiff was unlawfully traveling the highway at the time of the accident, and so was a trespasser, and that the defendant was not guilty of any shortage of duty owed to the plaintiff. (2) There is no evidence in the case tending to show any negligence on the part of the defendant. (3) On the evidence plaintiff was guilty of contributory negligence. In overruling the motion the court expressed grave doubt as to whether it should not be granted, but deemed it advisable to take that course that the case might be finally determined in this Court.

Concerning the first ground of the motion it was conceded that the plaintiff bought the automobile in question a month or six weeks before the accident; that it had been registered by the former owner, but that the plaintiff had not had it registered in his name as required by law. G. L. 4716 provides that an automobile or motor vehicle shall not be operated upon a public highway, or a private way laid out under authority of law, unless registered as provided in the preceding sections. By G. L. 4718 a person who violates a provision of the chapter of the statutes relating to the regulation of automobiles and motor vehicles, for which other penalty is not provided, is subjected to a fine of not more than one hundred dollars. It is provided elsewhere in this chapter that, upon the sale of an automobile, its registration shall expire, and that the purchaser shall take out new registration (G. L. 4677); and that the fee for reregistering the automobile shall be one dollar, provided it is done within five days after the purchaser comes into possession of the automobile. G. L. 4674.

The defendant's claim is that the plaintiff was unlawfully traveling on the highway, had no right to be there, as he was violating the law of the State; and, therefore, it was under no duty to take precaution for his safety while so using the highway approaching the crossing. The defendant relies upon an Alabama case and several Massachusetts cases, that fully sustain its contention. It is there held, under statutes similar to ours prohibiting the operation of unregistered automobiles on the highways, that the violation of this prohibitive statute makes a plaintiff a trespasser and not entitled to the privileges and protection which the law accords to a traveler on the highway. The unregistered automobile is regarded as "outside the pale of travelers" on the highway and as having no rights there except to be protected from reckless or wilful injury.

This provision of our statute regulating automobiles is now for the first time brought in question here. The Massachusetts Court had occasion to construe the statute in *Holden* v. *McGillicudy*, 215 Mass. 563, 102.N. E. 923, which was an action for injury to plaintiff's automobile from a collision at Guilford, Vermont. In the absence of evidence of the "common law" of this State on the subject, the court applied the Massachusetts rule and held that the plaintiff was a trespasser upon the highway, and that the defendant had violated no duty owed to him, though the jury had found, by special verdict, that the defendant was not in the exercise of ordinary care at the time of the accident.

The statute regulating automobiles and motor vehicles was enacted in 1904 (No. 86, Acts of 1904), and appears to have been taken bodily from the Massachusetts statute of the preceding year. The provision of the latter statute similar to the one now under consideration first came under consideration in 1908 in *Doherty* v. *Town of Ayer*, 197 Mass. 241, 83 N. E. 677, 14 L. R. A. (N. S.) 816, 125 Am. St. Rep. 355. The construction given by the Massachusetts courts furnishes no guide to the legislative intention in this State, since their decisions were subsequent to the adoption of the statute here; but a brief review of the Massachusetts cases may prove helpful as showing where the rule adopted there leads to. It was said in *Doherty* v. *Town of Ayer*, *supra*, that since the plaintiff was upon the road only as one riding in and operating. an automobile, if it was unregistered and if he was unlicensed, he had no relation to the highway, and he was in no sense a traveler, except as a violator of the law in reference to the use that may be made of the way. It was further said, in regard to the right of recovery, that a violation of the statute in this particular so affected his relation to the town in regard to the way and the only use he was making of it, as to leave him without remedy for an injury caused by a defect therein. In *Dudley* v. *Northampton St. Ry. Co.*, 202 Mass. 443, 89 N. E. 25, 23 L. R. A. (N. S.) 561, while recognizing the general principle that for an unlawful act to preclude recovery it must have directly contributed to the injury, the court held that the Legislature intended to outlaw unregistered automobiles and to give them, as to persons lawfully using the highways, no other right than that of being exempt from wanton or wilful injury; that the plaintiff was a mere trespasser, not only as to the owner of the soil, but also against the rights of all other persons who

were lawfully using the highway; and that the defendant owed him no duty except to abstain from injuring him by wantonness or gross negligence.   The court reached this conclusion because of the "peculiar provisions" of the statute, referring to the prohibition of the operation of an unregistered automobile upon the highway.

As the logical result of this conclusion, it was held in *Feeley* v. *City of Melrose,* 205 Mass. 329, 91 N. E. 306, 27 L. R. A. (N. S.) 1156, 127 Am. St. Rep. 445, that there could be no recovery for injuries to passengers in an unregistered automobile, though the passengers did not know that it was not registered, as they were not travelers upon the highway but trespassers.   Following this decision the Legislature enacted that the fact that the automobile was not registered should not be a defence unless the plaintiff knew or had reasonable cause to know that the statute was being violated. *Rolli* v. *Converse,* 227 Mass. 162, 116 N. E. 507. In *Chase* v. *New York Cent. & H. R. R.,* 208 Mass. 137, 94 N. E. 377, the court calls attention to the distinction between unlawful conduct which is a cause of the injury and that which is a mere condition of it; but held that the operation of an unregistered automobile was unlawful in every aspect of it, that everything in the conduct of the operator that enters into the propulsion of the vehicle is under the ban of the law, that the machine is at all times an outlaw, and that the conduct of the operator of such an automobile is permeated by disobedience of law, and so directly contributes to the injury.   The operator of an unregistered automobile is held liable as a defendant for all direct injury resulting from its operation upon the highway, though such injury was not the result of an act of negligence. *Koonovsky* v. *Quillette,* 226 Mass. 474, 116 N. E. 243, Ann. Cas. 1918 B, 1146.   In *Bourne* v. *Whitman,* 209 Mass. 155, 95 N. E. 404, 35 L. R. A. (N. S.) 701, the court reaffirms its position as to an unregistered automobile, but holds that an unlicensed operator is not a trespasser and so precluded from recovery, unless the failure to have a license is shown to be a contributing cause of the injury sued for.   These decisions place the operator of an unregistered automobile so far outside the protection of the law in Massachusetts that he is permitted to recover only when the defendant's conduct is in the nature of a wilful, intentional injury; or, in other words, when it amounts to a criminal or *quasi* criminal act. *Dean* v. *Boston Elev. Ry. Co.,* 217 Mass. 495, 105 N. E. 616.

Turning to the decisions of other states, we find a general dissent from the rule adopted in Massachusetts. They place violations of statutes requiring the registration of automobiles in the same category as other criminal statutes, and hold that they do not preclude a recovery unless there is a proximate, causal connection between the violation of the statute and the injury complained of. We have not gone to the trouble to compare their statutes with that of Massachusetts, as we regard any possible dissimilarity of little consequence in view of the construction we give to our own. We cannot conceive that the Legislature intended to place the operator or occupant of an unregistered automobile outside the protection of the law, when injured by the unlawful act of another, or to take away his civil rights merely because he is committing a misdemeanor, when his illegal act in no way contributes to the accident. To be sure, in form the statute prohibits the operation of an unregistered automobile upon a public highway; but its real purpose is to penalize the operation of such an automobile. The distinction between the status of a person operating an unregistered automobile and one operating an automobile without a license seems to us to be a distinction without any real difference. The statute requiring a license provides that a person shall not operate an automobile or motor vehicle upon a public highway unless licensed so to do as provided by law. G. L. 4693. Both statutes are prohibitive in form and the same person is the actor in each case. How can it be said that he is a trespasser in one case and not in the other? We held in *Dervin* v. *Frenier et al.,* 91 Vt. 398, 100 Atl. 760, that the operation of an automobile without the required license was not negligence *per se,* nor evidence of negligence, when causal connection was not shown between the violation of the statute and the injury sued for. There, the illegality of the defendant's act was considered a mere condition and not a cause of the plaintiff's injury. It would follow logically that an unlicensed operator of an automobile would not be precluded from recovering damages for an injury to himself or his property merely because he had no license. Such is the holding in Massachusetts (*Holland* v. *City of Boston,* 213 Mass. 560, 100 N. E. 1009), and we are not aware of any decision elsewhere to the contrary.

Construing the statute under consideration as we do, the fact that plaintiff's automobile was not registered as the law re-

quired would not make him a trespasser upon the highway nor affect his relation, at the time, to the defendant. We have no occasion to consider how it would be if the plaintiff were suing a town for damages due to a defect in the highway. Defendant relies upon *Johnson* v. *Irasburg*, 47 Vt. 28, 19 Am. Rep. 111, and *Holcomb* v. *Danby*, 51 Vt. 428, where the effect of a statute then in force forbidding certain travel upon the highway on Sunday was considered. But those cases are not in point with the case at bar. They went upon the ground that towns were not bound to maintain their highways for an unlawful use. See *Hoadley* v. *International Paper Co.*, 72 Vt. 79, 47 Atl. 169. It was of no consequence to the defendant that the plaintiff's automobile was not registered. Though his conduct was unlawful, it was a remote illegal act, or, in other words, merely a condition and not a proximate cause of the accident. The accident would have happened if the law in this respect had been fully observed.

Holding, as we do, that the defendant's duty to the plaintiff was that owed to a traveler upon the highway, we pass to the inquiry whether there was evidence for the jury on the question of defendant's negligence. Plaintiff's claim at the trial was that the defendant was negligent in failing to station a man with a lantern at the crossing to give warning that it was obstructed by the train. As to the controversy concerning the length of time that the crossing had been obstructed, it is enough to say that it is wholly immaterial whether the train had been standing there more than five minutes, or whether it had merely paused for a few seconds. Concededly it was moving, or on the point of moving, at the time the plaintiff ran into it. If the defendant had occupied the crossing more than five minutes in violation of the statute (G. L. 5177), it was not, in the circumstances, evidence of negligence, for it was only a condition and not the proximate cause of the accident. Assuming that the train had occupied the crossing for an unlawful length of time, plaintiff was not injured thereby. Nor, in the circumstances, was the length of time material in any view of the matter.

In order to charge the defendant with negligence, it must be found from some substantial evidence that its servants, in the exercise of ordinary care, should have known that, on account of the darkness, the cars upon the crossing were such an obstruction that a person traveling upon the highway approaching the crossing from the west, at a reasonable rate of speed, in an automobile

properly equipped with lights and carefully operated, would be liable to come in collision with the train. *Trask* v. *Boston & Maine R. R.*, 219 Mass. 410, 106 N. E. 1022; *Gage* v. *Boston & Maine R. R.*, 77 N. H. 289, 90 Atl. 855, L. R. A. 1915 A, 363. In order to sustain the court's ruling and charge the defendant with the negligence claimed, it must be held that the jury would be justified in finding that men of ordinary prudence and foresight in charge of the train at the time would have anticipated that such an accident might happen in these circumstances. We think that reasonable men could come to only one conclusion. Defendant's servants would be amply justified in acting upon the belief that travelers in automobiles properly lighted and driving at reasonable speed would observe the cars upon the crossing in time to avoid a collision. To borrow an illustration used in *Gage* v. *Boston & Maine R. R.*, *supra:* "Suppose, instead of the place being the intersection of a highway and the railroad, it had been the crossing of two highways, and the plaintiffs had run into the side of a load of logs which were being transported over the crossing; the driver of the logging team would have the same duty to exercise care for the benefit of the plaintiffs that the trainmen had, and the care he would be bound to exercise would be commensurate with the apparent danger to travelers on the other highway caused by his occupation of the crossing with a heavily loaded team. If the driver of the approaching automobile could see the obstruction in time to avoid colliding with it, reasonable men could not find that it was the duty of the driver of the team to have a lighted lantern on the side of his load toward the automobile, as a warning that the crossing was occupied."

If the circumstances attending the accident were as plaintiff claimed, it is apparent that the automobile was not stopped before it struck the train because of the greasy condition of the road. But the defendant was not responsible for this condition, and there was no evidence that the trainmen knew or ought to have known of its existence. Thus, an unusual condition, unknown to the defendant's servants, intervened that changed the plaintiff's situation from one of safety to that of danger. There was nothing in the evidence to show that the trainmen did not manage the train with reasonable care and prudence in view of all the circumstances they knew or ought to have known. The accident happened through no fault of the defendant, and the court should have sustained its motion on the ground that there

was no evidence for the jury tending to show actionable negligence. Any such duty as the plaintiff claims was, to say the least, conjectural and visionary; but a verdict based upon conjecture cannot stand. As in other cases, something more than a mere *scintilla* of evidence is required to sustain the burden of proof in an action for negligence. *Gage* v. *Boston & Maine R. R., supra; Fadden* v. *McKinney,* 87 Vt. 316, 322, 89 Atl. 351.

It is unnecessary to consider the questions presented under the third ground of defendant's motion, as the exception is otherwise sustained.

*Judgment reversed, and judgment for the defendant to recover its costs.*