## TEXAS & N. O. RY. CO. v. ADAMS.
### No. 1918.

Court of Civil Appeals of Texas. Beaumont. April 17, 1930.

Rehearing Denied April 23, 1930.

332

Baker, Botts, Parker & Garwood and Arterbury & Coolidge, all of Houston, for appellant.

Adams & McAlister, of Nacogdoches, for appellee.

O'QUINN, J.

Appellee sued appellant for damages for personal injuries growing out of a collision between an automobile in which he was riding and a freight train at a public crossing on appellant's track some four miles north of the city of Nacogdoches, Tex., March 27, 1928. The collision occurred at about 1:20 a. m. at night, while appellant was backing its engine and tender across the public road crossing to make a coupling with freight cars standing on the west side of the crossing. Appellee's car struck the engine just under the engineer's seat. The train of appellant was doubling what is known as Church hill, a grade on appellant's line, and had cut the train in two near a public crossing known as North Church Crossing, leaving the rear portion of the train near to, and west of, the crossing, and had carried the head end of the train on to Redfield switch, and was returning to pick up the part left, and was backing the engine and tender over the crossing to couple with the cars standing within a few feet of the crossing when the collision occurred.

Appellee alleged that his injuries proximately resulted from the following alleged acts of negligence on the part of appellant: (a) Failure to maintain a flagman or watchman at said crossing to warn persons about to enter upon said crossing of the approach of the engine and tender; (b) failure to construct and maintain gates or interlocking bars at said crossing, to be closed while trains were occupying or passing over said crossing; (c) failure to have a trainman stationed at the rear end of the tender in such position as to be able to flag the engineer in the event of danger; (d) failure of the engineer to keep a proper lookout in the direction the train was backing to discover appellee's approach to the crossing; (e) failure to ring the bell or blow the whistle, as required by law; (f) failure to have a brakeman on the rear of the tender as it approached the crossing to flag appellee; (g) failure to clear the approach of its right of way so as to enable those operating trains to see those traveling the highway; and (h) failure of the engineer to use ordinary care, by the use of all the means at hand, to stop the train after discovering appellee and realizing his perilous position.

Plaintiff further alleged that, in "doubling" the train at the time and in the manner in

which it was done, defendant was guilty of gross negligence, and because of the circumstances permitted to exist by defendant requiring the said train to be doubled defendant was guilty of such gross negligence that plaintiff was entitled to recover exemplary damages in the sum of $15,000, for which he prayed judgment.

Defendant answered, among other things, by general demurrer, general denial, and a plea of contributory negligence on the part of the plaintiff.

The case was tried to a jury upon special issues, in answer to which they found:

(a) That defendant failed to maintain a watchman to flag the crossing while the engine was backing over it. That such failure was negligence, and such negligence a proximate cause of plaintiff's injuries.

(b) That the crossing was one unusually hazardous and dangerous, and that the failure of defendant to maintain gates at the crossing was negligence, and such negligence a proximate cause of plaintiff's injuries.

(c) That defendant failed to have a flagman on the rear of the tender in a position to signal the engineer in the event of danger. That such failure was negligence, and such negligence a proximate cause of plaintiff's injuries.

(d) That defendant's right of way was obstructed "so that in operating its train from east to west in approaching said crossing to prevent running onto and across the crossing without seeing those traveling along the highway in time to prevent collision." That such obstruction was negligence, and such negligence a proximate cause of plaintiff's injuries.

(e) That the operation of the engine and tender over and across the crossing as it was operated at the time of the injury placed the plaintiff in a position of peril, and that the employees of defendant knew of the perilous situation of plaintiff in time, by the exercise of ordinary care, with the use of all means at hand, to have avoided injuring plaintiff, and that their failure to do so was a proximate cause of plaintiff's injuries.

(f) That the employees of defendant in charge of said train failed to keep a "constant vigil and lookout" in the direction the engine was backing to discover plaintiff and avoid injuring him. That such failure was negligence, and such negligence a proximate cause of plaintiff's injuries.

The issue as to whether or not the defendant failed to ring the bell or blow the whistle, as required by law, was not submitted to the jury.

As to negligence on the part of plaintiff, the jury found: (a) That plaintiff was not driving in excess of 35 miles per hour at the time he approached the crossing; (b) that as he approached the crossing he had his car under control; (c) that plaintiff, "when he was within such distance of the track that he could have seen a train, and when he was in such distance from the track that he could have stopped his car before reaching same," did look for a train; (d) that plaintiff, after ascertaining that a train was in the vicinity of the crossing, was not negligent in continuing on toward the crossing without slackening his speed; (e) that plaintiff's failure to stop his car before reaching the track, for the purpose of ascertaining whether he could cross same in safety, was not negligence.

On the issue of damages, the jury found in favor of plaintiff for $5,000 actual damages and $3,000 exemplary damages. Judgment was accordingly entered, motion for a new trial was overruled, and defendant brings this appeal.

At the close of the testimony, defendant requested the court to instruct the jury to return a verdict in its favor, which was refused. It also filed motion to set aside the findings of the jury. This was denied.

Appellant's first five propositions complain that the court erred in refusing to give its requested charge for an instructed verdict. It is contended that the requested charge should have been given because: (1) The evidence failed to show any causal connection between the acts of defendant complained of by plaintiff and plaintiff's injuries (that is, that no actionable negligence on the part of defendant was shown proximately resulting in plaintiff's injuries); (2) that the undisputed evidence showed that plaintiff was guilty of contributory negligence as a matter of law; and (3) that the issue of discovered peril was not raised by the evidence.

The record discloses that the collision occurred at a public crossing known as the North Church Crossing, about 4 miles north of the city of Nacogdoches, where the public highway crossed defendant's railway. The railroad ran generally east and west, and the highway ran generally north and south. The highway crossed the railroad at almost right angles. At this point the grade of the railroad track ascends from west to east up what is known as North Church hill. The railroad track at the foot of the hill is in a cut; the depth of same being below the natural ground from nothing at the eastern edge of the highway to 4.2 feet at 50 feet east of the highway, and to 5.3 feet at 160 feet east of the highway. The highway, after it leaves Nacogdoches, reaches North Church hill at a point about 1,600 feet south of the railroad, and at said point is about 18 feet above the rails of the track. It then descends said hill toward the railroad track; the slope being practically regular, except for slight changes of the grade at 900 feet and 400 feet before reaching the track. The evidence showed that a man standing on the right-hand (east)

margin of the highway 70 steps from the track could see a train approaching from the east when it got within 70 steps of the crossing, and that back up the hill 150 yards from the track one could see the train approaching from the east when it was 50 steps from the crossing. The collision occurred at 1:20 a. m. at night. At this time one of defendant's freight trains was proceeding from Nacogdoches towards Shreveport—west to east—and had stalled on North Church hill. The train was cut in two just west of, and near to, the public crossing in question. The front portion of the train had been carried on to and set out at Redfield, the next station. The engine and tender was then being backed down to and was slowly (traveling at two or three miles per hour) passing over the public highway crossing to couple onto the cars left at and near (about 30 feet of) the west edge of said crossing, when plaintiff ran his automobile into the engine, striking it just under the engineer's seat in the cab, which, according to the undisputed evidence, is 35 feet from the rear end of the tender. Plaintiff knew of the presence and location of the public crossing—was familiar with same. When he began to descend the hill, he says, knowing that a passenger train was about due, he looked to the right, and saw the reflection of a light to the east of the crossing, and that as he further descended the hill he determined that the light was pointing east, and concluded the train was going in that direction, and had passed the crossing. He was driving practically a new car, and the lights of his car were burning brightly. He estimated the speed at which he was driving at and prior to the time of the collision at 20 to 25 miles per hour, and testified that he could have stopped his car within 20 to 25 feet. The only showing as to the state of the weather was that it was cool. Other statements of fact will be made when necessary in the discussion of the several questions considered.

▋ Plaintiff pleaded, and the jury found, that defendant's failure to maintain a watchman at the crossing to flag the crossing while the engineer was backing over it, and the failure to maintain gates at the crossing, was negligence and the proximate cause of plaintiff's injuries. The crossing, as before stated, was out in the country some 4 miles from the nearest town. It is true that the jury found that the crossing was one unusually dangerous, but there is nothing in the record to show such to be the case other than that there was much travel both day and night over the highway. No other accidents or near accidents were shown to have happened there. The highway and the railroad crossed at practically right angles, and the view of the crossing appears to have been good—no obstruction other than a natural hill to the east, through which the track ran in a cut, which was no more than 4 or 5 feet deep at 160 feet east of the crossing. The presence of the defendant's engine and tender on the crossing and its passing over same was lawful; it did not constitute an unlawful obstruction. There was no finding that the statutory signals, ringing the bell and blowing the whistle, were not given, nor was there any complaint that the engine was not equipped with, and had burning, the statutory headlights. However, the undisputed evidence was that the statutory signals were given, and that the headlight on the engine and various cab lights were burning, and a wigwag equipped with an electric bell and an electric red light was in operation on the crossing and working at the time. The defendant's engine was rightfully occupying the crossing at the time, and the employees in charge of same were exercising due care, in so far as the management of the engine and tender in approaching the passing over the crossing is concerned. Plaintiff was not injured by being run into by defendant's engine, but by his running into defendant's engine as it was slowly passing over the crossing. He was not injured by any mismanagement of the engine.

Manifestly, the presence of gates or a flagman upon the crossing would not have as effectively warned plaintiff of the obstruction of the crossing by the train as the presence of the train itself. The duty to furnish additional signals, gates, or warnings of the presence of trains across a highway arises only when the operatives of the train could reasonably have assumed that, due to the peculiar condition, the lawful presence of the train across the highway was not sufficient to warn travelers approaching the crossing in a careful manner. The evidence here showed no such condition as rendered ineffective the lights which it could reasonably be presumed the plaintiff would have upon his car, and which he says he did have. The only excuse plaintiff gives for running into the train is the fact that as he came over the hill some 1,600 feet from the crossing he saw the reflection of a headlight east of the crossing, and that as he came on further down the hill toward the crossing he determined in his own mind that the headlight was pointed eastward, and he concluded that the train had passed over the crossing. We do not believe that this conclusion should avail plaintiff in considering whether or not the defendant railroad was negligent in not providing gates or a flagman, because: (a) This conclusion of plaintiff was not known to the employees of defendant, and they were not bound to consider same as a condition requiring that they give warning to plaintiff of the presence of the engine on the crossing; (b) plaintiff's conclusion that the train had passed on eastward was not based upon any negligent act of defendant. Plaintiff did not complain that defendant was negligent in not having a headlight on the rear end of the tender, or in ex-

posing a light pointing east when the train was backing west; and (c) the conclusion of plaintiff that the train had passed over the crossing going east did not relieve him of the duty to all the time keep a reasonable lookout for obstructions upon the highway of any nature, train, automobile, or otherwise.

■ Furthermore, in order to charge the railroad with negligence in not maintaining gates or a flagman at the crossing, it must appear that the defendant's ,employees in charge of the train, in the exercise of reasonable care, ought to have foreseen or anticipated that, because of the nature of the operations in doubling the hill, and the nature of the crossing, amount of travel, and the hour at which the accident occurred, one traveling the highway in an automobile properly equipped with headlights, and carefully operated at a reasonable rate of speed, would be likely to come in contact with the train while backing over the crossing. In other words, the employees of defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed and in the exercise of due care will observe cars upon the crossing in time to avoid coming into collision with them. It can hardly be contended with reason that the precautions in respect of which, as complained by plaintiff, the defendant failed in its duty, would be necessary in the daytime. It would seem to be a reasonable corollary that on any occasion, day or night, when the occupation of the crossing would be visible to a traveler using such care for his own safety as the employees of the railroad have a right to presume he will use, in time to allow the traveler to stop before coming into collision with the cars, the railroad ought not to be held liable. The failure of defendant to maintain a flagman or gates, under the facts, was not negligence, and therefore could not be a ground for plaintiff's action. St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; Trask v. Boston & Maine R. R., 219 Mass. 410, 106 N. E. 1022; Philadelphia & R. R. Co. v. Dillon, 1 W. W. Harr. (Del.) 247, 114 A. 62, 15 A. L. R. 894, 902; Orton v. Pennsylvania Ry. Co. (C. C. A.) 7 F.(2d) 36; Gage v. Boston & Maine Ry. Co., 77 N. H. 289, 90 A. 855, L. R. A. 1915A, 363; Allison v. Chicago, etc., Ry. Co., 83 Wash. 591, 145 P. 608; Gilman v. Central Vermont Ry. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102. We shall not quote from the above-cited cases, but will say that they are similar in facts, and decide the very question of negligence here discussed, and each of them pointedly holds that under the facts it was not the duty of the railroad company to maintain gates or have a flagman at the crossing in question, and therefore that negligence was not shown.

■ Appellant says that the allegation of plaintiff that defendant permitted its right of way at the approach to the crossing to be obstructed and its failure to remove such obstruction was negligence and the proximate cause of plaintiff's injuries, and the jury's so finding, are not supported by the evidence, and that such finding will not support the judgment. We think the assignment should be sustained. No obstruction was shown other than the natural rise of the hill beginning at the east edge of the highway and gradually rising to some 5 feet at 160 feet east from the crossing. It was shown that the employees operating the engine saw plaintiff, that is, saw the light of his car, as he came over the hill at 1,600 feet south of the track. It was also undisputed that there was no obstruction preventing those on the engine from seeing those traveling along the highway after the train had gotten to within 180 feet of the crossing. Moreover, whatever the situation was as to the nature of the obstruction, if any, existing at or near the crossing, it is well settled in this state that it is not negligence for a railway to place or permit to be upon its right of way obstructions to the view of one approaching a crossing, but that same is merely a matter to be considered on the question whether there was negligence in the operation of the train. In other words, it is not negligence for a railway to place on its right of way obstructions to the view of one approaching a crossing, but that it is merely a matter to be considered in determining whether there was negligence in the operation of the train. Railway v. Rogers, 91 Tex. 52, 40 S. W. 956; Railway v. Knight, 91 Tex. 660, 45 S. W. 556; Railway v. McCrorey (Tex. Com. App.) 23 S.W.(2d) 691. Our holding that the other matters alleged as negligence by plaintiff could not be sustained; there is no available finding of negligence against appellant to be considered with the finding of an obstruction, and therefore, under the law, said finding does not and cannot support the judgment, it not being the finding of an ultimate or controlling fact, and not a finding upon an issue upon which alone judgment for damages could be predicated.

■ Appellant's sixth, seventh, eighth, ninth, tenth and eleventh propositions complain that it was error for the court to submit the issue of discovered peril because same was not raised by the evidence, and that the finding of the jury upon that issue is without support in the evidence, and is against the overwhelming weight of the evidence. These assignments are sustained. Plaintiff, in his petition, specially pleaded:

"(h) Defendant was negligent in that, as the engine and tender were backing across the crossing, the engineer in charge of the operation thereof discovered the automobile and from the movement of the automobile he realized that he was attempting to cross over the crossing and recognized that he was in great peril and danger of being injured and

the engineer could have, after making said discovery, by the use of the means at hand, stopped the train and averted the injury to the plaintiff, but he failed to exercise ordinary care to do so after discovering the perilous position of plaintiff and realizing that he would not probably remove himself from danger, in time to save injury to himself, though the engineer had ample time in which to do so by a reasonable use of the means at hand, and his failure to do so was the proximate cause of the injuries."

It will be observed that plaintiff's plea is that the *engineer*—none other of the employees—*discovered* plaintiff and *realized* his perilous situation. The engineer testified:

"As to when I first saw this automobile, I will state that when I first saw the light of this car it looked to me like it was about three or four hundred yards; I did not get out and measure the distance, but it looked to me—there was a little dip in the road, but we could just see—I could see the reflection of its headlight. When I saw the car itself coming down the road for the first time, the head end of our tank was about half way across that highway; then the end of the tank backing across the road was about in the center of that highway. It is about 33 or 34 feet from my seat box to the end of that tank. Then that would throw me back 33 or 34 feet east of the road. I was taking the signals from my brakeman. Then the next thing that I noticed about that automobile it was hit under my seat box—it hit my engine under my seat box.

"As to how far I was from that crossing when I first saw him, I will state that I was right at the crossing; when I saw that man I didn't know who it was; I saw the headlight of the car. As to whether my fire box would not show up the road 75 yards if my tank was in the right hand margin of the road going north, I will state that my tank would be half way. The length of the tank and engine is 68 feet. When my tank was just hitting the right hand margin of the road, as to whether that would throw my cow catcher 68 ft. away practically, I will say when I saw the headlight my tank was half way in the highway. Then I saw it in plain view. As to whether I saw the reflection when it came over the road, I will state that I saw it when it went down near that top. As to whether I tell the jury that I never saw it any more, I will state that I was not watching the car; I was watching my brakeman. As to whether my engine is backing across there, and I saw him and that is more than 600 feet where I saw this, I will state that I cannot tell it. I saw the light of the car. I did not see the reflection when it came up; I just saw the light coming this way. I said it was then three or four hundred yards from the track. Then

I did not see it any more until I heard it hit under my engine; I didn't look.

"As to whether I ever saw the light except when it went to shining over that little rise, I will state that is the last time I saw the light. I never did see it any more; it went out when it hit. * * * As to whether there is anything that would obstruct my view of the headlight coming down that road after I got within 100 feet of the crossing coming west, I will say not a thing after I had been watching; he could have been coming down without any headlight. He did have one the last time I saw him. And I was sitting in this cab backing up, and I never did see him any more until he hit me.

"I stopped my engine dead still as I went in there, and let the negro off, and he walked across. As to where I had seen the light before then, I will state that I saw this light when I stopped; I had not seen it before then. When I first stopped I did not see it just over the hill; I started up and got the tank half way across the highway when this light came in view. I cannot say how far south it was. That is the first time I saw the light, and then I never saw it any more. I did not leave my seat in the cab; I was still there.

"As I came up to the crossing about to make this coupling I did not see any automobile pass the crossing going toward Nacogdoches. I was watching for signals, and I was going across the crossing, and I knew that I was about to make a coupling of the cars; and I had to watch the brakeman to know when to cut her off and stop. That is why I was watching across that crossing."

The above set out testimony is all that relates to the discovery of plaintiff by the engineer. It does not raise the issue of discovered peril. The rule is well settled that the doctrine of discovered peril does not arise unless the injured party is actually seen and his perilous position actually realized in time to avoid injury by the exercise of ordinary care in the use of all means at hand, and mere duty to discover, under the circumstances, will not raise the issue. In the absence of actual discovery and the appreciation of the peril the rule of discovered peril has no application. Railway v. McMillan, 100 Tex. 562, 102 S. W. 103; Baker v. Shafter (Tex. Com. App.) 231 S. W. 349; Railway v. Price (Tex. Com. App.) 240 S. W. 524. In the language of counsel for appellant:

"An examination of the testimony above set out, which is all that relates to the discovery of the plaintiff by the engineer, in substance, reveals that when the engineer saw plaintiff the plaintiff was three or four hundred yards from the crossing, and with the lights of his car burning, he was approaching at a speed unknown to the engineer a crossing already partly blocked by a tank ten

or twelve feet high. At the time the engineer saw the plaintiff, and under the circumstances, no reasonable mind would see that plaintiff was in peril. There was nothing to put the engineer on notice that the man, with his lights burning and with the engine and tender before him and lighted by the lights in the cab and rate of speed as not to be able to stop within three or four hundred yards. In fact, all the circumstances were such as to lead the engineer to believe that the man would stop. The evidence above set forth shows, then, that the engineer, intent on the operation of the engine and the coupling which he was about to make, looked away and that when he next saw plaintiff, plaintiff had already hit the train. To be sure, as plaintiff continued on across the crossing without checking his speed and finally came within such close proximity thereto as that he could not stop before reaching same, he came in a position of peril, but there is no testimony that the engineer saw the plaintiff after he got in such position of peril, nor is there any testimony that if the engineer had seen the plaintiff when he got in such close proximity to the train that he could not have stopped before reaching it the engineer could have done anything to have averted the accident; the crossing then was already completely blocked."

■ The fifteenth proposition challenges the finding by the jury that appellee, when within such distance of the crossing that he could have seen the train, and when he was within such distance from the track that he could have stopped his car before reaching the crossing, looked for a train, is without support in the evidence, and is against the great weight and preponderance of the evidence. This assignment is sustained. The undisputed evidence shows that the engine and tender were partly across the highway when plaintiff was at least 200 feet from the track; that at said time there was nothing to prevent one traveling the highway approaching the crossing, as was plaintiff, from seeing the obstruction on the crossing; plaintiff's headlights on his car were burning, the headlight on the engine and several lights in the engine cab were burning, an electric red light with electric wigwag at the crossing were operating, and fire was flashing from the oil pan of the engine, all this in plain view of plaintiff as he drew near the crossing, so that, if he did look, he must have seen the train. He says that he could have stopped his car within 20 to 25 feet, and surely if he had looked at the crossing at any time when he was within that distance he could not have failed to see it. But we think his own testimony shows that he did not look. Among other things, in explaining the situation, and as to whether he saw the train, he testified that he was some 250 yards from the crossing when he first noticed the engine, that is, when he first saw the lights, and that the

first time he actually saw the engine and tender was just the moment before he ran into them—when he was within 10 feet of them. He finally testified:

"I will say about the train moving slow; it seems like it jumped out to me; it appeared to come out right in front of me, and there was not any light on the back of the tank. I mean to tell that the engine just shot out upon me; it came like that; I don't know how fast it was running. The truth of it is what I mean to say is when I looked up it was out in front of me; the first thing I knew it was right in front of me."

This testimony of plaintiff plainly shows that, after seeing the lights of the engine when he was back 250 yards—750 feet—from the crossing, he did not again look for an object on the highway until, as he says, "when I looked up it was out in front of me; the first thing I knew it was right in front of me."

■ Special issue No. 22, submitted to the jury on the question of exemplary damages, was as follows:

"What amount of exemplary damages, if any, has the plaintiff sustained by reason of the gross negligence of the defendant in allowing and permitting its employees in using its main line in doubling Church Hill?

"You will answer by stating the amount, if any, in dollars and cents.

"In passing upon Special Issue No. 22, you are instructed before you can find for the plaintiff exemplary damages, you must find that the defendant, in allowing and permitting its employees to use its main line in doubling Church Hill, was guilty of gross negligence, as hereinafter defined.

"By 'gross negligence' is meant that entire want of care which would raise the presumption of a conscious indifference to consequences.

"Exemplary damages is compensation allowed an injured person for gross negligence of another by the way of punishment or example."

Appellant objected and excepted to said charge and its submission as follows:

"Defendant objects to Special Issue No. 22 for the reason that same is not raised by the evidence and further for the reason that said issue as submitted is upon the weight of the evidence and presupposed the existence of matters therein disputed.

"The defendant objects to the instruction given in connection with Special Issue No. 22 for the reason that it is a general charge in reference to exemplary damages. The case being submitted upon special issues it is error to submit any one feature of the case by way of a general charge."

These objections and exceptions were overruled. Appellant's twenty-fourth, twenty-

fifth, and twenty-sixth propositions challenge the court's action in so doing as error. We think the charge was subject to the objection that it was upon the weight of the evidence. It clearly assumes that the defendant was guilty of gross negligence· "in allowing and permitting its employees in using its main line in doubling Church Hill." However, in view of our holding on the next considered propositions, we think it unnecessary to further discuss this matter.

Appellant's twenty-first, twenty-second, and twenty-third propositions contend that it was error for the court to submit the issue of exemplary damages, as was done in special issue No. 22, for the reason that same was not raised by the evidence. The jury, in answer to said issue, found exemplary damages for plaintiff in the sum of $3,000. As before stated, appellant objected and excepted to the court's submission of said issue, for the reason that same was not raised by the evidence. After verdict, appellant moved to set the verdict aside, for the reason that it had no support in the evidence. The evidence discloses that the grade in question, known as Church hill, is one of several bad grades on its line; that in operating freight trains over this grade it sometimes became necessary to double, that is, when trains would stall, to cut same in two, and to carry the front portion on to Redfield, some two miles away, and return, backing, for the remaining portion. On this particular occasion the train stalled when a portion of it had passed over the crossing, the rear of the train not having reached the crossing; the train was cut in two near (within about 30 feet) the crossing, the front part being carried to Redfield, and that the engine and tender was backing up to couple onto the rear portion and was backing across the crossing when plaintiff ran his car into it. It was further shown that several things might cause the train to stall on this hill, namely, wrong estimate of the tonnage the train was carrying, weather conditions, and the mechanical condition of the engine pulling the train; and that these conditions could not always be anticipated; and that on the night in question they were not anticipated. The crossing in question, though a main highway and much traveled both by day and night, was situated out in the country some 4 miles from the nearest town, and was protected by an electric wigwag which was so equipped that upon the approach of a train it would move back and forth and display a red light and ring a bell. It was so operating at the time of the accident. There was no testimony of any other accident or near accident at this crossing.

It is well settled that for exemplary damages to be recoverable it must be shown that in doing the thing complained of the defendant was actuated by malice or the willful intent to injure, or was guilty of gross negligence, that is, such negligence as to raise the presumption of a conscious indifference to the rights of others, and amounting to an entire want of care. Cotton Press Co. v. Bradley, 52 Tex. 587; Railway v. Shuford, 72 Tex. 165, 170, 10 S. W. 408. We have held that actionable negligence on the part of defendant entitling plaintiff to recover actual damages was not shown, and for that reason the judgment will be reversed and rendered. But, while it is necessary that actual damages must be recovered to entitle one to exemplary damages, aside from this well-established rule and independently of same, we hold that the evidence herein does not raise the issue of exemplary damages. Nothing appears in the manner of maintaining the railway or its operation by appellant to raise this issue, nor was there anything in the operation of the train at the time in question to do so. The assignments are sustained.

By proper assignment appellant insists that the judgment should be reversed and here rendered because the undisputed evidence shows that plaintiff was guilty of contributory negligence as a matter of law, and therefore not entitled to recover. This was one of the reasons urged by appellant for its motion for an instructed verdict, and also for its motion to set aside the verdict. The court submitted issues to the jury relative to plaintiff's contributory negligence, and they answered them all in plaintiff's favor. Contributory negligence ordinarily is a question of fact for the jury. But, when the evidence is such that but one reasonable conclusion can be drawn from it, then the question is one of law for the court. The undisputed evidence shows that, when appellee reached the top of North Church hill, some 1,600 feet south of the railroad track, he saw the light of the engine. He then began to descend the hill directly toward the train. After going some distance, he concluded the light pointed to the east, and thought the train had passed the crossing. He was going at about 20 to 25 miles per hour at the time of the collision, and says he could have stopped his car within 20 to 25 feet. The lights of his car were burning brightly. He had an unobstructed view of the crossing all the time after starting down the hill. The usual signals—blowing the whistle and ringing the bell—were given when the engine and tender approached to back over the crossing. The engineer saw plaintiff's car lights when plaintiff was three or four hundred yards—900 to 1,200 feet— from the crossing. When plaintiff was 200 feet from the crossing, the tender had already occupied the crossing. When the engine reached the cattle guard east of the crossing, it sounded the whistle and slowed down and let the brakeman off. The brakeman then walked across the highway, signaling with his lantern to the engineer to back over the

crossing. It was while the engineer was slowly backing over the crossing that plaintiff, running his car at the rate of 20 or 25 miles per hour, without attempting to slow his speed, ran into and struck the engine just below the engineer's seat. Plaintiff had run his car 200 feet after the tender was upon the crossing, and while the engine (going about 2 or 3 miles per hour) was backing onto the crossing. The engine and tender were 68 feet long and some 10 or 12 feet high. The crossing was completely blocked by the engine and tender when plaintiff was 150 feet from the crossing.

It nowhere appears that plaintiff looked for the train, or that he looked for any obstruction in the highway after he says he concluded the train, the light of which he had seen, was going east and had already passed over the crossing. In fact, his own testimony shows he did not look, but that he ran to within 6 feet of the engine before he noticed it. He testified: "I will say about the train moving slow; it seems like it jumped out to me; it appeared to come out right in front of me, and there was not any light on the back of the tank. I mean to tell that the engine just shot out upon me; it came like that; I don't know how fast it was running. *The truth of it is what I mean to say is when I looked up it was out in front of me; the first thing I knew it was right out in front of me.*"

He also testified that when he looked up the engine was within 6 feet of him. He said: "I had a good pair of lights on my motor car and could see well ahead of me."

He further testified: "I cannot say if I looked off or not, or took my eyes off the road, but in an instant I saw the tank of the engine; when I saw it the tank had passed over the crossing and I was, I would judge, six feet from the engine."

No peculiar conditions making it difficult to see the crossing or the engine and tender as they began moving over the highway were shown. There was an electric wigwag equipped with a red light and an electric bell at the crossing, situated on the same side of the highway on which plaintiff was traveling, and it was in full operation when plaintiff came down the hill, approached the crossing and ran into the engine. The headlight of the engine and several lights in the engine cab were burning brightly, and fire was flashing from the oil pan under the engine. The brakeman, when he was passing along and over the highway crossing flagging the engineer in backing the engine, saw plaintiff coming down the highway. The plaintiff was then some 200 feet from the crossing.

My associates say that under the holding in the case of Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038, and other decisions following same, we cannot say under the evidence that plaintiff was guilty of contributory negligence as a matter of law, but that the question was one of fact for the jury. The writer cannot agree to this conclusion. It is my opinion that under the above-stated evidence all reasonable minds can arrive at but one conclusion, and that is that plaintiff was utterly lacking in the exercise of due care for his own safety, and was therefore guilty of contributory negligence. His own testimony, to my mind, forces this conclusion. He says that, when he was within 75 yards of the crossing, he met another car coming from the direction of the crossing, and that he thought the crossing was clear, or this car could not have passed over it. If he had looked just before meeting this car, or if he had looked after meeting the car, he must have seen the engine and tender on the crossing. If he had looked at any time when he was within 200 feet of the crossing up to say within 30 feet of the track, he could have stopped his car and avoided the collision, for he says he could have stopped within 20 or 25 feet. The law holds him to the exercise of ordinary care for his own safety, and, when he admits that when he looked up he was within 6 feet of the engine, he thus admits failing to exercise that ordinary care that rested upon him.

The court is agreed that, for the reason first above given that no actionable negligence on the part of defendant was shown, the judgment should be reversed and here rendered for appellant. The writer is of the further opinion that, because plaintiff was shown to be guilty of contributory negligence as a matter of law, the court erred in not instructing a verdict for appellant, and for that reason also the judgment should be reversed and rendered.

The judgment is reversed and here rendered for appellant.