## SIMPSON et al. v. STANOLIND OIL & GAS CO.

Civ. A. No. 3509.

United States District Court
E. D. Oklahoma.

Aug. 14, 1953.

George N. Otey, Ardmore, Okl., for plaintiffs.

Coleman Hayes and Norton Standeven, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiffs, Mrs. B. A. Simpson and Mrs. H. B. Fell, bring this action to recover damages from the defendant, Stanolind Oil and Gas Company, a corporation, alleging in substance that: in 1947 the plaintiffs executed an oil and gas lease on twenty acres of land in Carter County, Oklahoma. All of the minerals under said land are owned by the plaintiffs, subject to the said lease owned by the defendant. This lease was for a term of five years from date and as long thereafter as oil or gas was produced, and contained the further provision that if drilling operations were commenced within the primary term of the lease, the lease should be continued so long as such operations were carried on, and if production resulted therefrom, the lease should be continued so long as the property produced. Shortly after the expiration of the primary term of this lease a well was completed into the Goodwin sand at a location unauthorized by the then effective spacing order of

the Corporation Commission.[1] The plaintiffs further allege that although the Corporation Commission subsequently granted an exception which gave the defendant the right to produce from the questioned location[2] that but for the defendant's intentional violation of the existing law established by the spacing order, which impliedly was a part of the lease contract, the lease would have expired after the primary term and the plaintiffs would have received back the entire working interest of these minerals now owned by the defendant.[3]

The defendant company has now moved to dismiss upon the ground that the complaint fails to state an actionable demand.

Patently, there appears to be some force to plaintiffs' contention that the defendant, by disobeying and violating the Oklahoma statutes and spacing order promulgated

thereunder, perpetuated the life of the oil and gas lease which otherwise would have expired thus revesting in plaintiffs the entire working interest; and, that such damages were the immediate and direct result of the defendant's unlawful acts.[4]

However, under close scrutiny the plaintiffs' entire premise proves faulty.

The primary contention of plaintiffs must be that the defendant was guilty of breach of contract for the reason that the violated statutes and order were impliedly a part of the lease agreement between the parties.

■ At the time the instant lease was executed, 52 Okla.Stat. § 87.1 et seq. placed in the Corporation Commission the power to supervise rights related to common sources of supply in connection with waste and drainage. As said in Baker v. Tulsa Building & Loan Association:[5]

1. Although immaterial for the purpose of ruling upon this motion, defendant states in its brief that the well involved was originally projected as a Deese Sand test and that since the Deese is not spaced, a well projected to that formation may be located at any point on leased premises; that when the Deese sand was found to be dry the hole was deepened to test the Springer formation, where the Goodwin was encountered.

2. The pertinent statute, 52 Okl.Stat. § 87.1 (b) provides in part: "the well permitted on that unit shall be drilled at the location thereon as prescribed by the Commission, with such exception as may be reasonably necessary where it is shown, upon application, notice and hearing * * * the Commission finds that * * * for some other reason that to require the drilling of a well at the prescribed location on such spacing unit would be inequitable or unreasonable."

In granting the exception in question the Commission found: "It would be uneconomical to plug said well and drill a new well at the permitted location for the amount of oil that will likely be recovered from said unit" and further, that, "A well located in the Northeast ten acres of the unit will not have any geological or structural advantage over a well drilled at the permitted location".

3. The plaintiffs royalty interest is cut down from ⅛ to ¹⁄₁₆ by reason of the spacing orders in effect covering this land

which incorporate the plaintiffs' 20 acres into a 40-acre unit.

4. Plaintiffs cite 23 Okl.Stat. § 3 which provides: "Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." In 23 Okl.Stat. § 4, a detriment is defined as "a loss or harm suffered in person or property."

For measure of damages plaintiffs cite 23 Okl.Stat. § 21 which reads, "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin" and 23 Okl.Stat. § 61 which provides, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately cause thereby, whether it could have been anticipated or not."

5. 1936, 179 Okl. 432, 433, 66 P.2d 45, 50. Accord, Knight v. Clinkscales, 1915, 51 Okl. 508, 152 P. 133; Oklahoma Cotton Growers Ass'n v. Salyer, 1926, 114 Okl..

" 'The existing statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it.

" 'All contracts are formed to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties; the laws upon the subject of a contract are read into it and become a part thereof to the same extent as though they were written into its terms.' "

Under this rationale, inasmuch as the validity and constitutionality of the statutes in question and orders promulgated thereunder have been established,[6] it may be asserted with confidence that the defendant was impliedly bound to not drill a well under this lease off location. Consequently, the defendant's choice of location could well constitute a technical breach of this implied provision. However, conceding that the questioned violation constituted a breach of contract, the plaintiffs occupy an ambivalent position. On the one hand the plaintiffs recognize the validity of the lease agreement, and accept all the benefits emanating therefrom, and at the same time demand relief which in essence is compatible only with rescission.[7]

In reality, the plaintiffs' rights under the contract have in no way been diminished by the alleged breach; in addition, the plaintiffs own recognition and acceptance of all rights and benefits accruing under the lease must amount to a waiver of all relief comparable to that granted in rescission or cancellation.[8] Although plaintiffs urge that their cause of action is based upon a valid and existing contract, actually plaintiffs claim no damage to rights existing directly under a lease in full force and effect, but ask for damage equivalent to a terminated lease.

Even though the questioned breach probably was of insufficient materiality to warrant a rescission of the lease,[9] a timely demand to rescind by plaintiffs coupled with a refusal to accept any of the benefits under the lease would at least be consistent with fundamental contractual concepts.[10]

The case at bar must be sharply distinguished from one where as a direct result of a breach of contract the aggrieved party's contractual rights are diminished.[11] Logically, an injured party may continue to recognize the contract's existence and at the same time sue to recover damages for the diminution of legitimate contractual expectancies. For example, in the instant case, if the Commission had in some way

77, 243 P. 232; Anderson-Prichard Oil Corp. v. Corporation Commission, 1951, 205 Okl. 672, 241 P.2d 363, appeal dismissed 342 U.S. 939, 72 S.Ct. 562, 96 L.Ed. 698.

6. Patterson v. Stanolind Oil & Gas Company, 1938, 182 Okl. 155, 159, 77 P.2d 83, Palmer Oil Corporation v. Phillips Petroleum Co., 1951, 204 Okl. 543, 231 P.2d 997, appeal dismissed Palmer Oil Corp. v. Amerada Petroleum Corp., 343 U.S. 390, 72 S.Ct. 842, 96 L.Ed. 1022; Anderson-Prichard Oil Corporation v. Commission, note 5, supra.

7. The right to rescind generally exists as an alternative remedy to an action for damages where there has been a material breach of a contract and is most commonly exercised when the damaged party wishes to recover what he has given or its value. See Williston on Contracts, Vol. 5 (Rev.Ed.) § 1455, p. 4064. Also, see 12 Am.Jur. § 455, p. 1038.

8. "A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind." 12 Am.Jur. § 449, pp. 1030, 1031.

9. See 15 Okl.Stat. § 233 in regard to "Cases when party may rescind".

10. 15 Okl.Stat. § 235 provides: "Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: 1. He must rescind promptly * * * 2. He must restore to the other party everything of value which he has received from him under the contract; or [he] must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

11. See note 4, paragraph 2, supra.

penalized the defendant for violating the spacing order, and such penalty had resulted in a reduction of royalties received by plaintiffs, certainly the plaintiffs could then recover damages to the amount their contractual rights were impaired as a direct result of defendant's breach of contract.[12]

█ Apart from contract, the field of tort vests no right of action in plaintiffs.

The law in regard to actionable negligence arising out of a statutory violation is highly analogous to the problem at hand and sets forth pertinent norms. As mentioned in 38 Am.Jur. § 163, p. 834:

"An action for negligence based upon an alleged violation of a statute or ordinance cannot be maintained where it appears that the statute or ordinance was enacted or ordained for a purpose wholly different from that of preventing the injury of which complaint is made. To afford a right of action for injury from the violation of a statute or ordinance, the complainant's injury must have been such as the statute or ordinance was intended to prevent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show

that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

In Sinclair Prairie Oil Co. v. Stell,[13] the plaintiff sued defendant oil operators for damages resulting from the death of plaintiff's husband by drowning, who, while operating an automobile upon a public highway at night, drove his automobile upon a bridge which had been partially destroyed by flood and plunged into a pool of salt water which had been permitted by defendant to escape from defendant's lease, contrary to statute,[14] and had collected in the channel of the water course spanned by said bridge. In denying recovery Chief Justice Osborn in the syllabus said:

"1. The violation of a statute may of itself be a negligent act, but unless the injury complained of is the proximate result thereof, and the person injured a member of the class intended to be protected by such statute and the injury of the kind the statute intended to prevent, the violation of the statute does not constitute actionable negligence."

In the Sinclair case the purpose of the statute was to place an absolute responsibility upon oil operators for any damage done to crops and land adjacent to drilling sites injured by escaping salt water.

These principles when applied to the instant case readily indicate that the statute in view vests in plaintiffs no right of action.[15]

12. As mentioned in Williston on Contracts, Vol. 5 (Rev.Ed.) § 1454, p. 4061: "The normal redress for breach of contract is to give the injured party such relief as will put him in as good a position as if the contract had been performed. This is done by giving him as damages the value of a performance promised by the other party."

13. 1942, 190 Okl. 344, 124 P.2d 255.

14. 52 Okl.Stat. § 296 provides: "No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained in-

to proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

15. See Champlin Refining Co. v. Cooper, 1938, 184 Okl. 153, 86 P.2d 61, 63, involving the application of legislative intent in regard to "An Act to Regulate and Restrain the Running at Large of Domestic Animals, and to Provide for the Building and Maintaining of Fences." See, also, the "rat poison case" of Larrimore v. American Nat. Ins. Co., 1939,

Unquestionably 52 Okl.Stat. § 87.1 et seq. was enacted solely to establish an authoritative power to prevent waste and to supervise the correlative rights in common sources of supply of mineral interest holders. No thought remotely related to the plaintiffs' alleged cause of action prompted this legislation. Although the plaintiffs may fall within the *class* of persons meant to be protected by the statute,[16] the alleged loss is not the *kind* covered by the statute;[17] in addition, the questioned violation at most was a condition and was not a *proximate or direct cause* of the alleged loss.[18] The plaintiffs' failure to receive back the mineral interest in question was the proximate result of the drilled producing well and was not the proximate result of the spacing order violation. The violation could not be considered the cause, inasmuch as if the off-location well had been dry the working interest would have reverted to plaintiffs under the lease terms regardless of the violation.

The defendant's motion to dismiss should be sustained.

184 Okl. 614, 89 P.2d 340, 343, wherein the Court said, "It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him. [Citing cases.]" Cf. Tingle v. Chicago, B. & Q. Ry. Co., 1882, 60 Iowa 333, 14 N.W. 320.

16. If the defendant or some other operator should be guilty of waste or of taking a disproportionate share of oil and gas from a common source, doubtless plaintiffs would fall within the class entitled to protection.

17. See note 15, supra.

18. See Gilman v. Central Vermont Ry. Co., 1919, 93 Vt. 340, 107 A. 122, 16 A.L.R. 1102; 38 Am.Jur. § 166, p. 839.