**GILLHAM et al. v. ST. LOUIS SOUTHWEST-
ERN RY. CO. OF TEXAS.
(No. 2579.)**

(Court of Civil Appeals of Texas. Texarkana. May 29, 1922. Rehearing Denied June 1, 1922.)

**I. Railroads** ⊜⟾307(4)—**Watchman or signal
bell required at hazardous crossing.**

Only when a railroad crossing of a street is extraordinarily dangerous is the company required to keep a watchman there or maintain a signal bell or other extraordinary means to warn persons approaching it.

**2. Railroads** ⊜⟾348(3)—**Finding crossing not
extraordinarily dangerous warranted.**

Finding that a crossing was not extraordinarily dangerous so as to require maintenance there of extraordinary means of warning persons approaching *held* warranted by evidence, especially as trains were not operated over it faster than five or six miles an hour.

**3. Railroads** ⊜⟾347(4)—**Evidence of other ac-
cidents inadmissible on question of dangerous
crossing.**

That before the accident in question other accidents and near accidents had occurred there is not admissible on the question of the crossing being extraordinarily dangerous.

**4. Trial** ⊜⟾20, 312(3)—**Proceeding for further
instruction held "in open court."**

The proceedings were "in open court," as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1962, when the jury, after retiring, ask further instructions, they being in the courtroom when the court was in session, and being carried on openly, so that all interested might see and hear, though no announcement of the proceeding was made, and the attorneys were not present, and the judge went to where the jury were seated outside the bar.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Open Court.]

**5. Trial** ⊜⟾312(2)—**Proceedings held not to
amount to further instructions.**

There were no further instructions within Vernon's Sayles' Ann. Civ. St. 1914, art. 1962; what the judge said to the jury being in effect that they should be guided entirely by the instructions he had already given them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Instruction.]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Mrs. E. T. Gillham and another against the St. Louis Southwestern Railway Company of Texas. Judgment for defendant, and plaintiffs appeal. Affirmed.

September 21, 1920, S. R. Gillham was killed by one of appellee's trains at a point in the city of Greenville where its line of railway crosses Stonewall street. This suit for damages for his death (on the theory it was due to negligence on the part of appellee) was brought by appellant Mrs. E. T. Gillham, his widow, and appellant Mrs. E. E. Anderton, his only child. The appeal is from a judgment in appellee's favor, rendered in conformity to the verdict of a jury.

It appears from testimony in the record that appellee's line of railway ran east and west through Greenville, and that Stonewall street (58 feet wide) ran north and south and crossed said line of railway. The accident resulting in Gillham's death occurred

at this crossing. The deceased and one Brown were traveling north on said street in an automobile truck, at a speed of from 12 to 30 miles an hour. Brown was driving the car, and deceased was sitting by his side. When they reached a point 10 or 20 feet south of appellee's track, Brown discovered a passenger train approaching the crossing from the west. The train was moving at a speed of 5 or 6 miles an hour, and had reached the west boundary line of the street, or a point very near same. The automobile was about the middle of the street. Brown made no effort to stop it, but turned it eastward and across the track, narrowly escaping a collision with the train. Just after the automobile passed over the track the deceased jumped, fell or was thrown from it, falling in front of the engine, which ran upon and killed him. Brown testified he made no effort to stop because of fear if he did the automobile would stop on the track. The train was a regular one, and was running on a time schedule long established and known to Brown. The engineer in charge of the locomotive testified that his engine was near the west edge of the street when he discovered the automobile, which was then curving to the east, that he thought it was going to stop, and that he applied the emergency brakes at once when he discovered it was not.

Looney & Bowman, of Greenville, for appellants.

B. F. Crosby, of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] It appeared from testimony that appellee did not keep a watchman at the Stonewall street crossing, and did not maintain there a signal bell, gates, or any other means of warning people approaching the crossing of the approach of a train. The trial court instructed the jury to find for appellants if they believed that appellee was therefore guilty of negligence which was a proximate cause of Gillham's death. Appellants insist that a finding in their favor on that issue was demanded by the testimony, and that the trial court therefore erred when he refused to set aside the verdict and grant them a new trial.

It seems to be the law that a duty on the part of a railway company to keep a watchman or resort to other extraordinary means to warn persons approaching a road crossing does not exist unless the crossing is more than an ordinarily hazardous one. 33 Cyc. 945; 3 Elliott on Railroads, § 1157; note to Tisdale v. Railway Co., 20 Neg. & Comp. Cases Ann. 703. In M., K. & T. Ry. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013, the Supreme Court approved the ruling of a New Jersey court (Railway v. Mathews, 36 N. J. Law, 534) that it was not incumbent on a railway company to resort to such extraordinary means unless the crossing "was so peculiarly dangerous that prudent persons" could not use it in safety, and characterized such means as "an extra precaution required alone to guard the public against extraordinary hazards."

[2] With the rule stated in mind, we are not prepared to say that the finding of the jury was not warranted. It appeared from the testimony relevant to the issue that the crossing in question was 500 or 600 yards south of the public square in Greenville, a city with more than 12,000 inhabitants. The main residence part of the city was south, southeast and southwest of the crossing, and the territory outside of the city limits in those directions was thickly settled. There were public schools and a church in the vicinity of the crossing. Stonewall street was one of three paved streets running south from the public square, and one of the main thoroughfares of the city. It was used by many people, especially at the noon hour (when the accident occurred), during which four times as many people used it in passing over the crossing as used it at other hours of the day. By actual count kept for several days in October, after the accident occurred, it was found that people then passed over the crossing at the noon hour at the rate of one every 15 seconds. There were houses on both sides of the street near the crossing, which prevented a person approaching it from seeing a train moving toward it before he got near the track. How near a person approaching the crossing from the north must have been to have seen such a train was not shown, but a witness testified that, approaching it from the south, a person 61 feet from the crossing could see a man on appellee's track 125 feet west thereof, and 48 feet from the crossing could see a man on the track 150 feet west thereof. The train at the time of the accident was moving at the rate of 5 or 6 miles an hour, and it was not shown that appellee's trains ever moved over the crossing at a greater speed. We think the jury had a right to conclude that the testimony referred to did not show that the crossing was an extraordinarily hazardous one and was one a prudent person could have used in safety. Certainly so in view of the fact that it did not appear that trains were ever operated over the crossing at a greater rate of speed than 5 or 6 miles an hour. No reason appears in the testimony why a person approaching the crossing at a lawful speed should have been in danger from a train moving to it at a speed of 5 or 6 miles an hour, when at a distance of 61 feet from the track he could have seen the train before it got nearer than 125 feet to the crossing.

Appellants alleged in their petition that after appellee's employés in charge of the train discovered "the dangerous position of deceased" they failed to use care "to stop

the train or check its speed," and then alleged that, if said employés did use such care, "the failure of the train to stop or check its speed was due" to negligence of appellee "in having its engine and train equipped with defective appliances that did not act promptly and efficiently when brought into use." On the theory that there was testimony which authorized the jury to find appellee guilty of negligence in the respect alleged, appellants requested the court to charge the jury to find for them if the jury believed that the air brakes of the engine and cars failed to act promptly and efficiently, that such failure was due to negligence of appellee, and that such negligence was the proximate cause of Gillham's death. We think the testimony did not make such an issue, and that the trial court did not err when he refused appellants' request.

[3] Appellants, complain of the action of the court in refusing to permit them to prove by the witnesses Chapman and Huckaby that before the accident in question occurred collisions and near collisions between appellee's trains and vehicles moving on the street had occurred at the crossing, and they cite a number of cases which, they insist, show the testimony was admissible, but which we think do not. In Light Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702, one of the cases cited, the plaintiff's husband was killed by electricity conducted into his dwelling over wires owned and controlled by the defendant. Whether the current the defendant permitted to pass over the wire was excessive and dangerous or not was a controverted issue in the case. Testimony of witnesses that they also were shocked by the current passing over the wire was held to be admissible. In Mo. Pac. Ry. Co. v. Donaldson, 73 Tex. 124, 11 S. W. 163, another one of the cases cited, the question was whether fire which destroyed the plaintiff's property was from sparks escaping from one of the defendant's engines. There was evidence showing that the appliances to prevent the escape of fire were alike on all of defendant's engines. Testimony that other fires arose soon after the engine passed was held to be admissible. In Ft. Worth & D. C. Ry. Co. v. Measles, 81 Tex. 474, 17 S. W. 124, plaintiff's child was injured while playing on a turntable belonging to defendant. Testimony that another child playing on the turnable before the accident in question occurred was injured was held to be admissible to show notice to the defendant of the condition of the turnable and of the fact that children played upon it. We do not think the cases mentioned established appellants' contention that it was error to exclude the testimony in question here, and the others cited are not more nearly in point. We think the rule applicable was the one applied in Tiffin v. St. Louis, I. M. & S. Ry. Co., 78 Ark. 55, 93 S. W. 564, cited by appellee, and in some re-

spects like this one. There the plaintiff's son was killed at a crossing which she claimed was a particularly dangerous one. As supporting her contention she offered to prove by a witness "how many men had been killed" at the crossing during a given time. In overruling her contention that the trial court erred when he excluded the testimony, the Supreme Court of Arkansas said:

It was not "competent to show how many persons had been killed at the crossing. The injuries sought to be proved by the witnesses may have been caused by negligence of the servants of the company or by the negligence of the persons injured, and the testimony did not tend to establish the dangerous character of the situation."

[4, 5] We do not think the conduct of the trial court complained of requires a reversal of the judgment. It appears from the bill of exceptions that while the court was engaged in the trial of another case he had the jury in this one (who he was advised by the sheriff wished to ask him a question) brought into the courtroom. He then went to where they were seated outside the bar, where they asked him "whether there was any law in this state requiring railroad companies to keep a watchman at railroad crossings," and he verbally replied "that there was no act of the Legislature requiring it, but for them to read the charge and they would see that the question was submitted to them to determine under the evidence in the case whether the failure to do so was negligence." No announcement of the proceedings stated was made in the courtroom, and the attorneys for the parties were not in the part thereof where same occurred and did not hear what passed between the court and the jury. As the jury were returning to their room, however, the court advised one of appellants' attorneys thereof. The attorney did not object or except to the proceedings, and complained of same for the first time in the motion for a new trial. The contention is that the proceedings were in violation of the statute (article 1962, Vernon's Statutes) in that they were not "in open court" and in the presence of appellants' counsel, and in that the "additional instructions" were not in writing. The statute did not require the proceedings to be in the presence of counsel, and we think they were "in open court." They were in the courtroom at a time when the court was in session, and there is nothing in the record indicating they were carried on otherwise than openly, so that all persons interested might see and hear all that occurred. And we do not think what the court said to the jury constituted further instructions to them. They were, he in effect said to them, to be guided entirely by instructions he had already given them.

The judgment is affirmed.