## LOUISIANA RY. & NAV. CO. OF TEXAS v. LOUDERMILK. (No. 3366.)

Court of Civil Appeals of Texas. Texarkana.
April 4, 1927.

Rehearing Denied May 12, 1927.

**1. Railroads** ⊜⇒350(6)—**Peremptory instruction for railroad backing cars colliding with automobile at street crossing held properly refused.**

In action for injuries to one riding in automobile struck by backing cars at street railroad crossing, evidence *held* to justify refusal of peremptory instruction for defendant railway company.

**2. Railroads** ⊜⇒312(6)—**Statute held to require signals from train approaching street crossings (Rev. St. 1925, art. 6371).**

Rev. St. 1925, art. 6371, requiring train operatives to give signals in approaching public crossings, *held* applicable to city street crossings.

**3. Railroads** ⊜⇒350(5)—**Evidence held not to warrant submission of issue of railroad's negligence in not keeping flagman at street crossing.**

Charge submitting issue of railway company's negligence in not keeping flagman at street crossing, where collision with automobile occurred at about 10 p. m., *held* erroneous, in view of evidence that great volume of traffic ceased before such hour.

On Motion for Rehearing.

**4. Railroads** ⊜⇒307(7)—**Railroad has common-law duty to take reasonable precaution, in absence of statute or ordinance requiring special provisions at crossings.**

In absence of statute or city ordinance requiring special provisions at railway crossings, railroad company is governed by its common-law duty to take reasonable precaution for safety of those using highway.

---

**5. Railroads** ⬤⟳307(7) — **Failure to station flagman at crossing is negligence only when ordinary prudence calls for precaution.**

Failure to station flagman at railway crossings can be regarded as negligence only when ordinary prudence called for such special precautions under conditions existing at time of injury.

**6. Railroads** ⬤⟳307(7)—**Negligence in not stationing flagman at crossing depends on circumstances creating dangers, etc.**

In determining whether railway company was negligent in not stationing flagman at crossing, court should consider all circumstances tending to create dangers of collisions, such as frequency of use of track, volume of traffic over highway, opportunities of discovering approach of trains, and provisions made for protection of public against collisions.

**7. Railroads** ⬤⟳307(7) — **Only dangers from customary operation of trains in exercise of ordinary care for safety of persons using care should be considered in determining necessity for flagman.**

Dangers to be considered in determining whether ordinary prudence calls for flagman at railway crossing are those arising from usual, customary operation of trains at crossing, in exercise of ordinary care for safety of those using same degree of care in crossing track.

**8. Railroads** ⬤⟳307(7)—**Railroad is not required to keep flagman to warn reckless travelers.**

Railroad companies are not required to keep flagman to warn reckless travelers, and owe them no duty until their peril is discovered.

**9. Railroads** ⬤⟳337(1)—**Either negligence of injured party or that of trainmen is proximate cause of injury at crossing where there is no flagman.**

Injured party's negligence in crossing railroad tracks is in law the proximate cause of injury, where there is no flagman, while, if employees in charge of train are guilty of negligence causing collision, their negligence is proximate cause.

**10. Railroads** ⬤⟳307(7)—**Finding of negligence in not stationing flagman is not warranted, if traveler exercising ordinary care can discover train, operated with ordinary care.**

If persons exercising ordinary care for their own safety, under conditions existing at time of injury at railway crossing, could and would have discovered approach of train operated with ordinary care in time to avoid collision, finding that railway company was negligent in not stationing flagman at crossing is not warranted.

**11. Appeal and error** ⬤⟳909(1)—**Appellate court must assume, in absence of contrary evidence, that obstructions disclosed by record were only objects interfering with view of track at railroad crossing.**

In absence of evidence to contrary, appellate court must assume that obstructions disclosed by record were only objects interfering with view of track at railroad crossing where collision occurred.

**12. Railroads** ⬤⟳350(5) — **Evidence held not to warrant submission of issue whether failure to keep flagman at crossing was negligence proximately causing injury.**

In action for injuries to one riding in automobile struck by train at street crossing, evidence *held* insufficient to warrant submission of issue whether railway company's failure to keep flagman at crossing at 10 p. m., when collision occurred, was negligence proximately causing injury.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by Raymond Loudermilk against the Louisiana Railway & Navigation Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

McMahan, Dohoney & Dial, of Greenville, for appellant.

T. R. Potts, of Emory, and Clark & Clark, of Greenville, for appellee.

HODGES, J. This is an action for damages for personal injuries resulting from a collision at a crossing on Stonewall street in the city of Greenville. The appellant's switch engine was pushing a string of nine cars from the railway yards in the western part of the city to an industrial plant in the eastern part. The track was crossed by Stonewall street, running north and south. The appellee was riding in an automobile with three others, going north. The collision occurred at night, about 10 o'clock. Serious injuries were inflicted upon the appellee and some of the other occupants of the automobile. In his petition, the plaintiff charged negligence on the part of the appellant and its employees in failing to give the statutory signals, failing to have a watchman or gates at the crossing, failing to have a light on the front end of the string of cars, and in operating the cars at a dangerous rate of speed. The railway company answered by general and special demurrers, a general denial, and plea of contributory negligence on the part of the appellee and the driver of the automobile. The court overruled the exceptions and in a general charge submitted the issues of negligence above stated. The trial resulted in a verdict and judgment in favor of the plaintiff for the sum of $8,500.

[1] It was the contention of the plaintiff in the trial that the automobile was struck near the rear seat by the front end of the box car. The defendant, on the other hand, contended that, after the box car was nearly over the crossing, the automobile, going at a rapid rate of speed, ran against the side of the box car near the front end. After the train was stopped, the automobile was found jammed under the car, near the front trucks

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and on the south side. The testimony showed that it was a dark night, and that no street light was burning at the crossing. Two of the trainmen, with lanterns, were sitting on top of the front car. According to their testimony the train was moving at a slow rate of speed and was on and nearly over the crossing when the collision occurred. They also stated that as they saw the automobile approaching from the south at a rapid rate of speed they tried to warn the occupants of the danger, but their warning was not heeded. According to the testimony of the plaintiff and his witnesses, they approached the crossing at a slow rate of speed, and the automobile was nearly across the track when it was struck by the front end of the box car, near the rear seat, which was occupied by the plaintiff and a companion. They also testified that they looked for trains before going on the crossing, but saw none till just an instant before the collision. They did not see the lanterns of the trainmen, nor hear the signal bell ringing. Their testimony tended to show proper care on their part and a lack of care on the part of the railway company and its employees. There was a signal bell at the crossing, but the testimony offered by the appellee tended to show that it did not ring on that occasion, and that no other warning of the approach of the cars was given. The state of the evidence is such that the trial court was justified in refusing the peremptory instruction to return a verdict in favor of the appellant.

[2] The court charged the jury that it was the duty of the operatives of that train to give the statutory signals in approaching the public crossing, and submitted that issue. Appellant objected to the charge, on the ground that the provisions of article 6371 of the statute are not applicable to street crossings in a city or town. As supporting that proposition the case of Railway Co. v. Shockley (Tex. Civ. App.) 214 S. W. 716, is referred to. We are inclined to think that no such ruling was intended in that case, especially in view of contrary holdings in other cases, such as Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; I. & G. N. Ry. Co. v. Dalwigh (Tex. Civ. App.) 48 S. W. 527. The evidence shows that this string of cars started from a point a mile or more distant from the crossing where the collision occurred. It would be difficult to find a logical reason for saying that this statute had no application to that highway crossing.

[3] In the sixth paragraph of his charge the court submitted the issue of negligence based upon the failure of the railway company to keep a flagman at that crossing. It was alleged by the plaintiff that the crossing was extrahazardous, and such protection was necessary to prevent collisions with trains. The objection is that the evidence was not sufficient to raise that issue. The proof showed that Stonewall street was one of the principal highways of the city of Greenville, which had a population of about 14,000. A large number of automobiles and pedestrians passed over that street during the day and immediately after the picture shows at night. At other times the traffic was not extensive. On the night of the accident, only one automobile passed while the injured parties were being cared for and removed. There were a few buildings south of the track, which to some extent interfered with a clear view of each side of the crossing, but these were not shown to be such as would prevent a person approaching the track, and exercising ordinary prudence, from discovering passing trains in time to avoid a collision. There was only one track at that place, and the evidence fails to show that this was used with unusual frequency, or that there were any local conditions which tended to create confusion and distract the attention of people passing that way. The Cotton Belt track crossed the same street about 375 feet south of that crossing. One witness, who lived near the crossing and whose testimony was not disputed, testified that after 9:30 o'clock at night this street was traveled but little.

In the case of Railway Co. v. Magee, 92 Tex. 616, 50 S. W. 1013, our Supreme Court says:

"The charge is in harmony with the general principles which govern the liability and prescribe the duties of railroad companies. Such charge would not be applicable to a state of facts which did not show extra danger in operating trains at that point. In the case of Railroad v. Matthews, 36 N. J. Law, 534, this question was under discussion, and the court said: 'In this narrow aspect, the rule laid down was this: That if that particular place was so peculiarly dangerous that prudent persons could not use the public road in safety, unless the company employed a flagman or other extraordinary means to signal the approach of their trains, then, in such event, it was incumbent on them to employ such extraordinary means. And this proposition seems to me to be, in its application to the case then trying, in all respects correct.' It is an extra precaution required alone to guard the public against extraordinary hazards."

In this case it devolved upon the appellee to prove a situation which comes within the rule announced above, and we think he has failed to do that. The only condition which can be relied on as tending to show an extrahazardous situation is the large volume of traffic, and it is undisputed that this volume was very materially lessened at the time of night when this accident occurred. The jury probably would have been justified in concluding that ordinary prudence required the keeping of a flagman at that crossing during the daytime, and in the early part of the night. If the accident had occurred during those hours, the charge would not have been inappropriate. But, as framed, it authorized the jury to find that a flagman

should have been retained till a late hour of the night and after the great volume of traffic had ceased. In the case of Tisdale v. Ry. Co., 228 S. W. 133, 16 A. L. R. 1264, the Commission of Appeals, in passing upon a state of facts somewhat different from those here involved, held that such an issue was raised by the evidence. But we think the conclusion reached in this case 'is not in conflict with the holding in that case.

There are other assignments presented in the brief of the appellant, all of which have been considered, but are overruled without further discussion.

Because of the charge submitting an issue not sufficiently raised by the evidence the judgment of the trial court will be reversed, and the case remanded for a new trial.

### On Motion for Rehearing.

There is, as claimed by counsel for the appellee, an inaccuracy in the following statement made in the original opinion:

"One witness, who lived near the crossing and whose testimony was not disputed, testified that after 9:30 at night this street was traveled but little."

That witness did not live near the crossing, and he followed the testimony quoted with the statement that the traffic at that time of night was heavy in warm weather. But that correction does not require a different disposition of the appeal.

[4-6] In the absence of some statute or city ordinance requiring special provisions at railway crossings, a railroad company is governed by its common-law duty to take reasonable precaution for the safety of those 'using the highway. The failure to station a flagman at crossings can be regarded as negligence only when, under the conditions existing at the time an injury occurs, ordinary prudence called for such special precautions. In determining that question the court should take into consideration all of the circumstances which tend to create the dangers of collisions, such as the frequency of the use of the railway track by the company, the volume of traffic over the highway, the opportunities of discovering the approach of trains, and the provisions which had been made for the protection of the public against collisions. If after considering these it can fairly be said that ordinary prudence required the presence of a flagman to warn those using the crossing of the proximity of approaching trains, then a charge embracing that issue may properly be submitted to the jury.

[7-9] It should also be said, in this connection, that the dangers to be considered are those arising from the usual and customary operation of trains at that place conducted in the exercise of ordinary care for the safety of those who may be using the same degree of care in crossing the track. Railroad companies should not be required to keep a flagman at crossings for the purpose of warning reckless travelers. They owe such no duty till their peril is discovered. Nor should they be expected to keep a flagman at crossings merely to guard against the negligent operation of trains by their own employees. If the injured party is guilty of negligence, his negligence is in law the proximate cause. If the employees in charge of the train are guilty of negligence in its operation, causing a collision and injury, their negligence is the proximate cause. It follows, then, that the duty of providing a flagman arises only when demanded by ordinary prudence to protect travelers of ordinary care against dangers resulting from the prudent and usual operation of trains.

[10-12] In applying the principles stated, it may be said that, if under the conditions existing at the time of this injury persons exercising ordinary care for their own safety could and would have discovered the approach of trains being operated with ordinary care in time to avoid a collision, there was no legal basis for a finding that the railway company was negligent in failing to station a flagman at that crossing to warn people that a train was coming. We have re-examined the testimony, and find this to be the substance of the evidence bearing upon that issue: There was at that place only one railway track. The street south of the crossing was on ground practically level. The extent of the railway traffic passing over that crossing is shown only by the statement of the foreman of the switching crew on that occasion, who testified that he used that track every day. The traffic over the street was heavy during the daytime, and often into the night; but the evidence warrants the conclusion that as the night advanced the traffic grew lighter. At the time this accident occurred, about 10 o'clock p. m. October 22, the traffic over the street was light. One witness, the only one interrogated upon that point, testified that during the time he was there he saw only one car pass while they were caring for the injured. There were some obstructions which interfered with a clear view of the trains approaching the crossing from the west. Those obstructions were south of the railway track, and affected only a view of east-bound trains. It was undisputed that even with those obstructions a traveler going north, when within 50 feet of the track, could see a train 150 feet west of the crossing. There was no evidence as to what, if any, obstructions interfered with a view of the track to the east of the crossing, or that prevented travelers going south from having a clear view of the track on both sides of the public highway. In the absence of evidence to the contrary, we must assume that the obstructions disclosed by the record were the only objects which interfered with a view of the track at that place.

It thus appears that whatever consideration should generally be given to the volume of traffic over the street, or the frequency of the use of the track by the company, because of the confusion likely to result, those conditions did not in any way affect the appellee in this case. He has no legal right in this controversy to rely upon conditions, calling for special provisions for the safety of the public, which did not exist at the time he was injured. There is nothing in the evidence to indicate that he expected the presence of a flagman, or depended upon such warning. He alleged, and his evidence tended to show, that the direct cause of his injury was the negligent manner in which that train was being operated—the failure to give the proper signals, and the rate of speed at which it was moving.

There are also other conditions to be considered in determining whether the issue in question should have been submitted. The appellant had installed at that crossing an electric signal bell to give an alarm when trains were approaching. There was also a street lamp hanging near the crossing, which, according to the testimony, gave a fairly good light on the crossing. The testimony was conflicting as to whether the signal bell was ringing on that occasion or not. Several witnesses testified that it was, while others stated that they did not hear it and did not think it was ringing.

Taking the entire situation into consideration, we are of the opinion that the evidence is insufficient to warrant a finding that the failure of the appellant to keep a flagman at that crossing at that time of night was negligence and a proximate cause of the injury to the appellee. It may be that upon another trial sufficient evidence can be produced to justify the submission of that issue.

The motion will be overruled.