## TEXAS & N. O. R. CO. v. STRATTON et ux.
### No. 9383.

Court of Civil Appeals of Texas. San Antonio.

June 13, 1934.

As Amended on Denial of Rehearing Oct. 3, 1934.

Baker, Botts, Andrews & Wharton, of Houston, B. W. Teagarden, of San Antonio, Boggess, La Crosse & Lowrey, of Del Rio, Frank Lane, of Brackettville, and David E. Hume, of Eagle Pass, for appellant.

Jones & Jones and Robt. M. Lyles, all of Del Rio, for appellees.

MURRAY, Justice.

Appellees, Clarence H. Stratton and wife, Carrie Stratton, instituted this suit against appellant, Texas & New Orleans Railroad Company, seeking to recover damages for the loss sustained by them in the death of their son and daughter, Joseph Richard Stratton and Carrie D. Stratton, caused by the collision of a Ford automobile in which their son and daughter were riding and a railroad train of appellant. The collision occurred about two miles north of the city of Eagle Pass, Tex., about 1 o'clock a. m. on January 15, 1933.

The case was tried before a jury, and upon their verdict judgment was rendered in favor of appellees against appellant in the sum of $7,497.67, with interest. The Texas & New Orleans Railroad Company presents this appeal.

The evidence shows that on January 15, 1933, four young people left Eagle Pass, Tex., in a Ford automobile going to Del Rio, and thence to Brackettville. Seated on the front seat were Joseph Richard Stratton and Joe Balsch, and on the back seat were Harold Berry and Carrie D. Stratton. Joseph Richard Stratton was driving the automobile. About two miles north of Eagle Pass, and while traveling on the highway leading to Del Rio, the automobile collided with a railroad train operated by the agents, employees, and servants of appellant. The two boys on the front seat were instantly killed, and the boy and girl on the back seat received injuries which resulted in their death a few days later.

At the point where the wreck occurred a spur track owned and maintained by appellant crosses the highway. The spur track runs east and west; the highway north and south. The Ford automobile was proceeding in a northerly direction, and the train was going in an easterly direction. The automobile struck the fourth car from the engine and was badly wrecked. It caught on

fire and burned up. None of the occupants of the automobile lived to tell how the accident occurred. The train was estimated to be moving at the rate of from 3 to 10 miles per hour, while the automobile was estimated to be running at the rate of from 35 to 65 miles per hour.

The jury found that the automobile was not being driven at an unlawful rate of speed, so this would amount to a finding that it was not going faster than 45 miles per hour. A truck passed in front of the train just before the engine reached the highway, and met the Stratton automobile just before it collided with the train. The driver of this truck stated that he was driving between 15 and 17 miles per hour, and that the Stratton automobile slowed down to about the same speed as they passed each other. There was evidence that the night was cloudy and foggy and the visibility very poor. However, there was other testimony that the moon was shining brightly and the visibility excellent.

The findings of the jury as set out in appellees' brief were as follows:

"(a) That the failure of Appellant to erect and maintain a sign at the crossing, as is provided by the Statutes, was a proximate cause of the death of the two Stratton children.

"(b) That the operatives of the locomotive in question, in approaching said crossing failed to blow the whistle of said engine in such proximity of the crossing, as would, under the circumstances, have been reasonably calculated, to warn persons about to or in the act of using said crossing. That said failure was a proximate cause of the death of the two Stratton children.

"(c) That the operatives of said train failed to have the bell, on such locomotive engine, ringing continuously from the time the train started (at a point less than 80 rods from the crossing) until it had passed said crossing; and that such failure was a proximate cause of the death of the two Stratton children.

"(d) That the condition surrounding the crossing at the time of the collision was such as to render it more than ordinarily dangerous as a night time crossing and that such conditions were known and by exercise of ordinary care would have been known to defendant, its agents, servants and employees.

"That the failure of the operatives of the train, upon such occasion, to have some person stationed upon the Highway, in the proximity of said crossing with a light to warn said persons traveling upon said Highway and about to and in the act of using said crossing, of the presence of the train across same, was due to negligence; that such negligence was a proximate cause of the death of the two Stratton children.

"(e) That the failure of Appellant to keep and maintain a light at or in the vicinity of said crossing, was due to negligence; and that such negligence was a proximate cause of the death of the two Stratton children."

Appellant's first proposition is as follows: "The evidence in this case shows that the automobile in which the deceased parties, for whose death suit is brought, were riding, collided with a freight train of the defendant at a crossing on a public highway; that the train had just previously proceeded across the highway and was pulled slowly forward by the engine with a bright headlight, and that the headlight and the cars could be seen several hundred feet, and that the train was moving slowly across and was upon the crossing when the automobile in question struck the fourth car, or about the middle of said train of eight cars; that the highway upon which the automobile was traveling was open, wide, with view unobstructed, and practically level for a distance of eight or nine hundred feet, and that the automobile, even according to plaintiffs' testimony, was traveling at a rate of speed at approximately thirty-five miles an hour; that the engine attached to the train had remained stationary and started forward to recross the crossing just prior to the accident at a point less than eighty rods and only about 250 feet from the crossing, and if the train and cars could not have been seen in time to have averted the accident, neither could a crossing sign at the crossing on the opposite side of the train, for that matter, or even on the side from which the automobile approached, and even if there were no crossing sign and even if there were no bell sounded on the engine, and even if there were no crossing light or persons stationed at the crossing to warn approaching automobiles, such failures, if any, on the part of the defendant could not have been and were not the proximate cause of the collision between the box car and the *train* (automobile), and the train itself upon the crossing was sufficient warning and notice to persons about to and in the act of using said crossing."

■ We conclude that the above proposition should be sustained. The evidence clearly shows that the highway was straight and almost level for a distance of eight or nine hundred feet in the direction from which the Ford automobile was approaching the crossing. There were no obstructions, except

houses and mesquite trees that set well back from the highway. The train was lawfully upon the highway, and was moving slowly in an easterly direction. The engine with its bright headlight had crossed the highway and had proceeded about 190 feet when the Ford automobile, in which Joseph R. Stratton and Carrie D. Stratton were riding, ran into the train and collided with the fourth car from the engine. Appellant was not guilty of negligence, proximately causing the collision, in not having other signs and lights and giving other signals to warn persons approaching the crossing of the slowly moving train across the highway; the presence of the train itself was sufficient warning. If the box cars and other cars could not be seen, then a cross sign or other signals could not have been seen. As is said in Philadelphia & R. Ry. Co. v. Dillon, 1 W. W. Harr. (Del.) 247, 114 A. 62, 65, 15 A. L. R. 894: "Here, then, the railroad company had a right to assume that the plaintiffs would act in a reasonable way to avoid running into the train of box cars while it was lawfully standing across the highway. If the defendant's trainmen had a right to assume that a reasonably careful man driving an automobile on a highway at night would use such lights and adopt such a rate of speed as that he could bring his machine to a standstill within the distance that he could plainly see by the lights on his machine a railroad box car twelve feet high standing across the highway motionless on a railroad track, and completely obstructing his passage along a straight unobstructed highway, then the defendant did not then omit to perform any duty by not showing lights, or giving other warning of the presence of the train."

In Texas & N. O. R. R. Co. v. Adams (Tex. Civ. App.) 27 S.W.(2d) 331, 334, it is said: "Manifestly, the presence of gates or a flagman upon the crossing would not have as effectively warned plaintiff of the obstruction of the crossing by the train as the presence of the train itself."

To the same effect is Thompson v. St. Louis Southwestern Railway Co. of Texas (Tex. Civ. App.) 55 S.W.(2d) 1084.

The above cases seem to be directly in point, except that in the present case we have the added fact that the night was foggy and the visibility was bad. Attorneys for appellees in discussing the density of the fog and the poor visibility at the time and place of the accident use the following language: "That on the occasion of the collision the fog was so dense the driver of an automobile could not see more than from thirty to sixty feet. That the lights of an automobile would not shine on box cars on the crossing more than thirty feet away. That even the powerful headlight of a locomotive showed but dimly through the fog. That a blazing automobile could not be discerned through the fog until almost upon it."

Yet the evidence offered by appellees shows that the automobile in which the Stratton children were riding had been proceeding along the highway at from 35 to 40 miles per hour; that the brakes were applied by the driver of the automobile, and the signs on the pavement showed that the wheels were locked and skidded for a distance of about 60 feet; nevertheless the automobile ran headlong into the train with such force that the occupants of the front seat were instantly killed, and the occupants of the rear seat received injuries resulting in their death a few days later.

There was also testimony that the moon was shining and the visibility was good. It occurs to this court that whether the visibility was good or bad the trainmen had a right to presume that people using the highway would drive at a rate of speed which would permit them to bring their automobile to a full stop if within the reach of their lights it should be discovered that the highway was blocked by a slow moving train. If the fog was so dense that a burning automobile could not be seen until right upon it, persons using the highway should have stopped or crept along at a slow rate of speed which would have enabled them to have instantly stopped the automobile if any object should be discovered in their path. The trainmen had a right to presume that all reasonably careful persons would so conduct themselves, and, as before stated, did not owe the duty to give any other warning than the presence of a slow moving freight train across the highway, or at least any such failure could not be the proximate cause of a collision such as occurred in this case.

The evidence is insufficient to show that this crossing, even under the existing bad visibility, was an extrahazardous crossing, but even if it be regarded as such the evidence clearly shows that flagmen, lanterns, or other signals could not and would not have avoided this accident. If a moving box car or a burning automobile could not be seen, then certainly a flagman with a lighted hand lantern could not have been seen. Whether you accept the evidence that the visibility was good, or that it was bad, you reach the conclusion that appellant could not be liable. The use of signs, signals, and warnings is for the purpose of letting persons using the highway

know of the presence of the crossing, and that a train is approaching the highway. Under the facts in this case, after the train had completely blocked the highway and was lawfully passing over the highway, it was within itself sufficient warning to persons using the highway to beware of the train.

The judgment of the trial court will be reversed and judgment here rendered that appellees take nothing and pay all court costs of this and the trial court.

### On Motion for Rehearing.

Appellees have filed a motion for a rehearing insisting that the crossing involved in this case was shown to be an extrahazardous crossing which required more than ordinary care on the part of appellant.

■ We have again carefully considered this matter and again arrived at the conclusion that the evidence is insufficient to establish the fact that this crossing was more than an ordinarily hazardous nighttime crossing.

The evidence shows that the crossing, which was occupied by a slow moving train at the time of the collision, was about two miles north of the city of Eagle Pass. That there was a loading platform, a filling station, and several occupied dwelling houses in the vicinity. The highway was 80 feet wide and free from obstruction. It was straight and almost level for about 900 feet south of the crossing from which direction the ill-fated automobile was approaching. The highway was the Eagle Pass-Del Rio highway, which carried considerable traffic, both day and night, and the railroad track was a spur track, used on an average of once in twenty-four hours. There was evidence that the night was foggy and the visibility bad, and that this was the usual condition at and near this crossing at this time of the year.

Appellees have cited the following cases as supporting their contention that this crossing was an extrahazardous crossing in the nighttime: Tisdale v. Ry. (Tex. Com. App.) 228 S. W. 135; Missouri, K. & T. Ry. Co. v. Long (Tex. Com. App.) 299 S. W. 854; Galveston, H. & S. A. Ry. v. Wells, 121 Tex. 310, 50 S.W.(2d) 247, 251.

Each of these cases has reference to railroad crossings in or near cities or towns where there were a number of trains daily, and the approaches were obstructed by buildings and other objects. None of these decisions deal with crossings located more than two miles from a city or town and occupied at the time of the accident by a slow moving train.

Our view that the evidence is insufficient to support the finding that this crossing was an extrahazardous nighttime crossing is in accordance with the following cases: Thompson v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 55 S.W.(2d) 1084, 1085; Robinson v. Houston Belt & Terminal Co. (Tex. Civ. App.) 23 S.W. (2d) 894, 895; St. Louis & S. W. Ry. Co. v. Hill (Tex. Civ. App.) 13 S.W.(2d) 420; Galveston-H. Electric Ry. Co. v. Patella (Tex. Civ. App.) 222 S. W. 615, 627; Smith v. G.-H. Electric Co. (Tex. Civ. App.) 265 S. W. 267; Gillham v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 241 S. W. 512; Galveston, H. & S. A. Ry. Co. v. Burr (Tex. Civ. App.) 291 S. W. 299; Texas & N. O. R. Co. v. Adams (Tex. Civ. App.) 27 S.W.(2d) 331, 334; Louisiana Ry. & Nav. Co. v. Loudermilk (Tex. Civ. App.) 295 S. W. 193.

■ Neither do we agree with appellee's contention that it was the statutory duty of appellant to keep the bell ringing until the train had crossed the highway. Article 6371, R. S. 1925, as amended by Acts 1931, c. 107, § 1 (Vernon's Ann. Civ. St. art. 6371), provides in part as follows: "A bell of at least thirty (30) pounds weight and a whistle shall be placed on each locomotive *engine*, and the whistle shall be blown and the bell rung at a distance of at least eighty (80) rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until *it* shall have crossed such public road, or stopped. * * *" (Italics ours.)

The pronoun "it" can only refer back to the noun engine, and thus there is no duty on the part of the railroad to keep the bell ringing after the engine has crossed the public road.

In support of our original holding to the effect that, under the evidence in this case, reasonable minds could come to no other conclusion than that the operatives of appellant's train were not guilty of negligence proximately causing this collision, we wish to cite the following additional authorities: Berry on the Law of Automobiles (4th Ed.) p. 729, § 774, et seq.; Frush v. Waterloo, etc., Co., 185 Iowa, 156, 169 N. W. 360; Gilman v. Central Vt. R. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; Gage v. Atchison, T. & S. F. R. Co., 91 Kan. 253, 137 P. 938, Ann. Cas. 1915B, 410; Nadasky v. Public Service R. Co., 97 N. J. Law, 400, 117 A. 478; McGlauflin v. Boston & M. R., 230 Mass. 431, 119 N.

E. 955, L. R. A. 1918E, 790; Huddy on Automobiles (5th Ed.) p. 725, § 566; Philadelphia & R. Ry. Co. v. Dillon, 1 W. W. Harr. (Del.) 247, 114 A. 62, 66, 15 A. L. R. 894.

In the Dillon Case we find the following:

"If his light be such that he can see objects for only a distance of ten feet, then he should so regulate his speed as to be able to stop his machine within that distance and if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required. * * *

"The trainmen of the defendant had a right to assume that a reasonably careful person driving an automobile on that highway at that time would adopt such lights and rate of speed as that he could and would bring his automobile to a standstill within the distance that he could plainly see the train of the defendant, and so avoid running his machine into it, and therefore these employees of the defendant company were not negligent in failing to give warning by lights, or otherwise, of the presence of the train as an obstruction to the highway."

If this is a correct statement of the law, and we feel that it is, appellant could not be held liable for damages in this cause.

With reference to the failure of appellant to maintain the crossing sign, the law does not require that two such signs be maintained. Had a crossing sign been maintained on the north side of the track, all requirements of the law would have been met. With the highway blocked by the presence of the train, whether or not the railway company maintained a crossing sign on the north side of the highway would become immaterial and could not have been a proximate cause of the collision. The same thing is true if a flagman with a lantern had been on the north side of the track.

■ With reference to the ringing of the bell and the blowing of the whistle, these signals are required for the purpose of giving warning of the approach of trains and not of the presence of a train. Travelers have no right to rely upon such signals for the purpose of determining whether or not the highway is blocked by the presence of a train. Fort Worth & D. C. Ry. Co. v. Hart. (Tex. Civ. App.) 178 S. W. 795; Nadasky v. Public Service R. Co., 97 N. J. Law, 400, 117 A. 478, 479.

In the Nadasky Case the court said: "Assuming, therefore, as we should assume on the proof or lack of proof in this case that the defendant had not occupied the crossing with its car for more than a lawful period, the question is whether it was obliged in the execution of its duty toward the public to light up the car so that travelers upon the highway would see the lights and be warned of its presence at that point. We make nothing of the signals that have been spoken of above; these were manifestly intended for the warning of travelers, when the crossing should be, in fact unobstructed, that a car or train was approaching, and that they were liable to be struck if they attempted to cross; the plaintiff had no right to rely upon them as warning of something which was actually in possession of the crossing in plain sight and visible except for the temporary conditions of darkness. As to an obstruction of this kind, we have the authority of Jacobson v. New York, Susquehanna & Western R. Co., 87 N. J. Law, 378, 94 A. 577, where a substantially similar case was presented and in which it was held that there was no duty to warn or to show lights, and this decision, we think, is controlling in the present case."

■ With reference to the failure to maintain a stationary light at the crossing it would be unreasonable to require any railroad company to maintain a stationary light at the intersection of a highway and a spur track only used occasionally, located more than two miles from the city and not being an extrahazardous crossing.

It is quite plain, as a matter of law, that appellant was not guilty of a shortage of duty in any way proximately causing the collision, which was the result of the driver of the Stratton car running into the side of appellant's train.

The motion for a rehearing will be overruled.