**COMPTON v. TEXAS & N. O. R. CO.**

No. 10216.

Court of Civil Appeals of Texas. Galveston.

June 25, 1935.

Rehearing Denied July 16, 1936.

H. J. Rayl and C. E. Loeb, both of New Orleans, La., and Stewarts, Noble Carl, and Byron Economidy, all of Galveston, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Armstrong, Cranford Barker & Bedford and W. E. Cranford, all of Galveston, for appellee.

PLEASANTS, Chief Justice.

This suit was brought by appellant against appellee, and other defendants who were dismissed from the suit by plaintiff on the trial in the court below.

The cause of action alleged in appellant's petition was for damages for the death of her husband, Charles Compton, which the petition alleges was caused by the negligence of appellee's servants and agents in the operation of a train of appellee across a public highway. The following are the specific grounds of negligence alleged in the petition:

"1. The defendant failed in its statutory and common law duty to blow the train's whistle or ring its bell until it passed said crossing.

"2. The defendant failed in its duty to equip its crossing with signal bells, lights and statutory crossing sign.

"3. The defendant failed in its duty to have a watchman at the crossing or maintain lights on its car."

Appellee answered by general demurrer, general denial, and a plea of contributory negligence of the deceased husband of appellant; and further pleaded that the collision in which appellant's husband was killed was caused solely by the negligence of Grover Carrington, the driver of the automobile in which the deceased was riding when he met his death.

Upon the conclusion of the evidence the trial court, at the request of appellee, instructed the jury to return a verdict in favor of appellee, and upon return of such verdict judgment was rendered in accordance therewith.

The evidence before the jury was sufficient to sustain the following findings of fact:

The train with which the automobile collided consisted of 87 empty cars and an

engine with a tender. The crossing at which the collision occurred was over the Galveston and Texas City public highway. There is no elevation of the highway at this crossing, the grade of the railway tracks and the highway being the same. The night was so dark and foggy that the driver of the automobile, moving at the lawful and reasonable rate of speed plaintiff's evidence shows this automobile was moving, with its headlights burning and its brakes in good condition, and the driver keeping a careful lookout for obstructions on the crossing, could not discover the slowly moving train of empty cars on the crossing in time to have prevented collision with the moving train. There were no lights on the passing train nor signals of any kind to give warning to the occupants of the automobile that the train was crossing the highway. There was a railroad crossing sign on the west side of the crossing which could not be seen by those in the automobile approaching the crossing from the east. The engine and 60 of the empty cars had passed the crossing before the automobile which was coming from Texas City to Galveston and gotten within a mile of the crossing. At the time of the collision the engine pulling the cars was approximately two-thirds of a mile north of the crossing, and if any whistle was sounded or the bell on the engine was rung at that distance from the crossing it could not have been taken as a warning to the driver or any of the occupants of the automobile of the slowly moving empty cars then on the crossing. About an hour before this collision this automobile with the same driver and occupied by the same persons, except one other who returned with them from Texas City and was injured in the collision, had passed over this crossing coming from Galveston and may be charged with knowledge of the fact that the highway was crossed by the appellee railway, also by the International & Great Northern Railway, which crossed the highway a short distance west of the track of appellee. In addition to the usual board crossing signals on the west side of its tracks, the International & Great Northern Railway had flashlight signals at the crossing to give warning to those using the highway of any obstruction of the highway by passing trains.

The majority of the court are of opinion that this evidence before set out raises issues of fact that should have been submitted to the jury, and therefore the trial court erred in granting defendant's request for an instructed verdict in its favor.

The appellee relies upon the cases of Texas & N. O. Ry. Co. v. Stratton (Tex. Civ.App.) 74 S.W.(2d) 741, and Texas & N. O. Ry. Co. v. Berry (Tex.Civ.App.) 74 S.W.(2d) 750. In each of these cases the San Antonio Court of Appeals reversed a judgment of the trial court in favor of the plaintiff and rendered judgment in favor of the defendant Railway Company, and in each case a writ of error was denied by our Supreme Court.

We think these cases present facts which easily distinguish them from the instant case. The Court of Appeals in its opinion [Texas & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 746] makes this statement of the facts:

"The accident occurred at the intersection of a paved state highway and one of the appellant's spur tracks, two miles out of Eagle Pass, when the motorcar ran head-on into the middle of a 380-foot train which was moving slowly across the highway at a probable rate of 3 or 4 miles per hour.

"The train was executing a switching movement. An engine with six cars was detached from a made-up train on the main tracks, a few hundred feet away, and was backed out on the spur track, past the crossing, to pick up two cars stationed a short distance beyond the crossing. The coupling was made, the air connected, and the engine was pulling the eight cars back towards the main track. The engine, moving forward, had pulled the string of cars half way across the highway, when the motorcar, moving over the highway at a rate of speed variously estimated at from 17 to 65 miles per hour, collided with the fourth car of the moving train.

"The four young people, residents of Bracketville, 40 miles from Eagle Pass, were returning to their homes, after an evening spent in Eagle Pass and Piedras Negras.

"The accident occurred at 1 o'clock, Sunday morning. The weather was very cold.

"A nearly full moon (which had risen at 9:02 o'clock that night) was overhead. Some of the witnesses testified the night was fairly clear, with a few light clouds passing slowly by; that there was

no fog or other elements to darken the moonlit night. Some testified there was a light fog."

The opinion then sets out testimony of witnesses for the appellees to the effect that the night was utterly dark from fog which rolled over the vicinity in heavy clouds, obscuring all objects, including lights; that fog was so dense a driver of an automobile could not see more than 30 to 60 feet ahead; that the light of an automobile would not shine on box cars on the crossing more than 30 feet away; that even the powerful headlight on a locomotive showed but dimly through the fog. The court then proceeds with its statement of the facts shown:

"The approach to the crossing was over a straight, even and practically level highway for a distance of at least 900 feet. All the evidence in the case, from both interested and disinterested sources, shows conclusively that when the motorcar entered into that 900-foot zone the train was already upon the crossing. According to their testimony, two brakemen, riding on top of the train with their lighted lanterns in hand, saw the car as far away, possibly, as 1,400 feet, but by that time the train was entering upon the crossing, and the car, approaching at the rate of 60 or 65 miles per hour, according to the brakemen, began to slow down when within 70 feet of the crossing, but crashed into the fourth car from the engine. This testimony is corroborated by conclusive evidence that the motorcar skidded on locked brakes for about 60 feet before striking the train. Further corroboration appears in the incident of a motortruck, approaching from the opposite direction, and crossing in front of the train just before the latter reached the crossing. The driver first slowed his truck down, as if to let the train pass ahead of him; then, apparently changing his mind, speeded up and crossed immediately in front of the train, meeting the ill-fated Ford about 40 feet beyond the crossing, according to his testimony. He further testified that the Ford was slowed down to about 17 miles per hour, for him to pass, and then speeded up, and on into the train.

"As it neared the train the Ford swerved over to the left, striking the moving freight car just off the paved section of the highway. As a result of the impact, the Ford was impaled upon metal parts of the freight car door, was dragged along

with the train for 30 feet, its gas tank in the front end was ripped open, the escaping gas was ignited, the Ford and its occupants were enveloped in flames. The passengers were badly burned, and the Ford, a crumpled mass from the impact, was burned to a skeleton. Parts of the front of the Ford, including a part of the hood, the torn gas tank, and one of the doors, were so firmly impaled upon the freight car that they could not be removed, the next day, except by the use of a crowbar."

Upon this state of the evidence we agree with the San Antonio Court of Appeals that reasonable minds cannot differ in the conclusion that the fatal collision in that case was due to the negligence of the driver of the automobile.

The undisputed evidence in the instant case shows there were no lights on the slowly moving cars on the crossing, and nothing there to give notice to the driver of the approaching automobile that the crossing was obstructed.

In this state of the evidence we think that in moving its train of empty cars across the highway in the dark and foggy condition shown by plaintiff's evidence, and without any warning to those using the highway that the crossing was obstructed, the jury was authorized to find that appellee failed to use ordinary care for the safety of persons traveling along the highway, and should be held liable for injury thereby caused such users of the highway, regardless of the application of any statute prohibiting the obstruction of a public highway. If the driver of the automobile, as the evidence of plaintiff shows, had no notice of this careless obstruction of the highway by appellee and was using it with the care required of him, there is no liability on his part for the injury complained of by appellant.

The issue of contributory negligence of the deceased is not raised by the evidence.

These conclusions require that the judgment be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.

LANE, Justice (dissenting).

Beatrice Compton brought this suit against Texas & New Orleans Railroad Company and others to recover damages for the death of her husband, Charles Compton, who was killed on the early morning of October 19, 1931, when the au-

tomobile in which he was riding was driven into a slowly moving train of the defendant as it passed over a public highway.

Plaintiff dismissed as to all defendants except Texas & New Orleans Railroad Company; therefore no further mention of such other defendants will be made.

The plaintiff's cause of action was founded upon alleged acts of negligence upon the part of the defendant which it is alleged proximately caused the death of Charles Compton, husband of plaintiff.

The pertinent allegations relative to the negligence of defendant were that the defendant failed to erect and maintain a crossing sign at the point where its railway crossed said public highway, as required by article 6370, Revised Civil Statutes of Texas, to blow the whistle and ring the bell on the engine before crossing the highway, as required by law to equip the crossing with signal bells and lights, and to post a watchman at such crossing, or to have lights upon the railroad car in its train into which the automobile was driven. In other words, that defendant failed to, in any manner, warn deceased, or the driver of the automobile in which deceased was riding, of the presence of the railway crossing or the train, and that such failure was the proximate cause of the death of the deceased, Charles Compton.

One of the grounds of negligence asserted by the appellant was the failure of the appellee to adopt extraordinary measures of warning for this particular crossing, such as equipping the cars of the train with lights, equipping the crossing with signal bells, equipping the crossing with lights, and equipping the crossing with a watchman, but there was no pleading or evidence asserting and establishing that the crossing in question was ordinarily an extrahazardous nighttime crossing, although there were allegations that the night was dark and that the driver of the automobile was unable to see defendant's train.

Defendant answered by general demurrer, general denial, a plea of contributory negligence on the part of the driver of the automobile and of the deceased, and a plea that the accident in question was caused solely by the negligence of the parties mentioned.

The accident in question occurred at the point where the railroad tracks of defendant crossed a highway. The Texas City highway begins on the highway running from Galveston and Houston. From the point where the highway leaves the Galveston-Houston highway, which runs practically north and south, it runs east to Texas City. The railroad tracks of the defendant cross the Texas City Highway running north and south. Going from Galveston to Texas City on the Texas City highway, one must travel eastward, and of course in returning to Galveston on the same route he must travel westward. Just a short distance west of defendant's track, the track of the International & Great Northern Railway crosses the Texas City highway.

At about 12 o'clock on the night of October 19, 1931, one Grover Carrington, by arrangement, drove Charles Compton and Bertha Thomas from Galveston to Texas City in his automobile to get one Billie Bizzette, who was in Texas City. In going over to Texas City at about 12 that night the party crossed over the railroad track at the point where the accident in question occurred, and again attempting to cross it about thirty minutes later on their return to Galveston. Carrington, the driver of the automobile, testified that when he crossed the crossing going from Galveston to Texas City it was foggy and dark and that the same conditions existed when they started back to Galveston, and at the time of the accident; that he never saw the engine of the train; that the train was a long one; that he ran into the side of it; that he did everything he could do to bring his car to a stop to avoid hitting the train as soon as he saw it; that his headlights were burning and his brakes in perfect condition; that he did not see any crossing signs, nor hear any whistle blown.

Plaintiff introduced in evidence photographs of the demolished car taken after the accident. These photographs show that the automobile collided with the train with tremendous force.

The undisputed evidence shows that the train at the time of the collision was crossing the crossing at a rate of speed not exceeding ten miles per hour and was rightfully on the track; that the automobile struck the train with so much force that it burst the air cylinder, which was

a round cylinder probably 2½ feet long, made of cast iron and cast steel about a quarter of an inch thick, as if it had been hit with a sledge hammer, which let the air out of the cylinder and threw the air brakes into emergency and stopped the train almost instantly. This cylinder was situated underneath the railroad car and about 4 or 5 feet from the side of the car.

At the time of the accident the freight train operated by defendant was moving about eight or ten miles per hour over the crossing where the accident occurred. It had already passed the crossing and its locomotive was 60 box cars north of the crossing. This train was 87 cars in length.

It was shown by the undisputed evidence that the highway from Texas City to the crossing where the accident occurred was in a flat prairie and was unobstructed to the view; that such was the character of the highway for more than two and a half miles after leaving Texas City to the point where the accident occurred, which point the driver of the automobile, the deceased, and Bertha Thomas had passed about thirty minutes prior to the accident. As already stated, the undisputed evidence shows that the train in question was a freight train of 87 cars and that the automobile of Carrington, moving at a speed of 35 miles per hour, was driven against the sixtieth car of this train, which was 12 feet high.

Several witnesses testified that at the time of the accident it was dark and foggy.

Article 6370, Revised Civil Statutes, relative to the erection of *a sign* by railway corporations at certain points, provides: "Such corporation shall erect at all points where its road shall cross any first or second class public road * * * a sign with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars."

While I think that it was shown by the preponderance of the evidence that such a sign as provided for by the statute was standing at the crossing where the accident occurred, there was evidence to the contrary.

Upon the close of the evidence, the trial court, following the decisions in Texas & New Orleans Railroad Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741, Id. (Tex. Civ.App.) 74 S.W.(2d) 746, and Texas & New Orleans Railroad Co. v. Berry (Tex.Civ.App.) 74 S.W.(2d) 750, instructed a jury impaneled to try the cause to return its verdict in favor of the defendant, upon the conclusion that the presence of the train itself, carrying box cars 12 feet in height, and the fact that the injured parties had thirty minutes prior to the accident passed over the same crossing, and necessarily knew its location, was under the law and undisputed facts adduced, a sufficient warning to any prudent person of the presence of the railroad crossing and the presence of the train which was moving over the crossing, and that the asserted negligence of defendant, even if true, could not have been a proximate cause of the accident.

The jury returned the verdict as directed, and judgment was accordingly rendered.

The majority of this court, holding that the questions as to whether the driver of the car and its occupants were guilty of contributory negligence proximately causing the accident which resulted in the death of Charles Compton, and whether the failure of appellee to erect a sign as required by law upon the crossing where the accident occurred, if it did so fail, was a proximate cause of the accident, were questions for determination by the jury, reversed the judgment of the trial court and remanded the cause. I respectfully dissent from such holding of the majority, and here entered my reasons for dissenting from the order reversing the judgment and remanding the cause.

After a careful examination and consideration of the statement of facts, I have reached the conclusion that the driver of the automobile in question, and its occupants, who had only a few minutes before the accident passed over the crossing and knew its location, were as a matter of law guilty of negligence, the sole proximate cause of the accident, in that said occupants of the automobile, knowing where the crossing was, on a dark, foggy night approached such crossing at a rate of speed of 35 miles per hour and while maintaining such speed ran into a box car 12 feet in height which was upon and moving across the public highway upon which the accident occurred, thus negligently and inexcusably causing the accident.

. I am also of opinion that the undisputed evidence shows as a matter of law that the failure of appellee to erect the sign in question, if there was in fact such failure, was not a proximate cause of the collision, nor a contributing cause thereto. Under the undisputed facts shown in this case, it is apparent that if there was no crossing sign at the crossing, no bell sounded, or whistle blown on the engine which had passed the crossing and at the time of the accident was about one-half mile therefrom, or if there was no crossing light, or person or persons stationed at such crossing to warn approaching automobiles of the location of the crossing, such failures, or any one of them, on the part of defendant could not have been and were not the proximate cause of the collision between the automobile and the box car, which the driver of the truck struck at a rate of speed of 35 miles per hour. The fact that such driver knew that the point where the accident occurred was a place where the railroad crossed the highway, and the presence of the train of box cars, 12 feet high, moving upon the crossing, was undoubtedly sufficient warning and notice to said occupants of the automobile that they were approaching a railroad which they intended to cross.

Article 6370, Revised Civil Statutes, provides that railroad corporations shall erect at all points where its road shall cross any first or second class public road a sign to give notice of the proximity of the railroad and as a warning to persons of the necessity of looking out for cars thereon.

There was neither pleading nor evidence that the crossing in question was an extrahazardous one so as to impose upon the defendant the duty to adopt extraordinary measures of warning to travelers about to use the crossing of the presence of the railroad. Indeed, all the evidence was to the contrary. Surely if the driver could not see the moving box car on the crossing he could not have seen the crossing sign had it been in place as required by the statute. In other words, as stated by counsel for appellee: "Assuming without admitting that no warning sign, as required by article 6370 of the Revised Statutes, was in position at the crossing, the uncontradicted and undisputed evidence, both for plaintiff and for defendant, established that warning sufficient to apprise prudent persons using the highway at the

time and place of the collision in question with the presence of the train across the highway was given, and the alleged failure to erect or maintain a crossing sign at the crossing, as required by the statute, could not as a matter of law have been the proximate cause of the accident, because the train occupying the crossing was itself a sufficient warning of its presence, the statute not having as its purpose the warning of persons using the highway of the presence of a train, but having for its sole purpose the warning of such persons of the presence of the track, and there was no material issue upon this point to be determined by the jury, and the court did not err in instructing a verdict for the defendant."

In Texas & New Orleans Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741, at page 743, column 1, a case in which the material facts were substantially the same as in the present case, the San Antonio court said: "Appellant was not guilty of negligence, proximately causing the collision, in not having other signs and lights and giving other signals to warn persons approaching the crossing of the slowly moving train across the highway; the presence of the train itself was sufficient warning. If the box cars and other cars could not be seen, then a cross sign or other signals could not have been seen. As is said in Philadelphia & R. Ry. Co. v. Dillon, 1 W.W.Harr.(Del.) 247, 114 A. 62, 65, 15 A. L.R. 894: 'Here, then, the railroad company had a right to assume that the plaintiffs would act in a reasonable way to avoid running into the train of box cars while it was lawfully standing across the highway. If the defendant's trainmen had a right to assume that a reasonably careful man driving an automobile on a highway at night would use such lights and adopt such a rate of speed as that he could bring his machine to a standstill within the distance that he could plainly see by the lights on his machine a railroad box car twelve feet high standing across the highway motionless on a railroad track, and completely obstructing his passage along a straight unobstructed highway, then the defendant did not then omit to perform any duty by not showing lights, or giving other warnings of the presence of the train.'"

In the trial of the Stratton Case in the trial court judgment was rendered for the plaintiff upon a verdict of a jury.

On appeal the San Antonio court reversed the judgment and rendered judgment for the defendant Railroad Company. The Supreme Court refused a writ of error in the case.

The case of Wichita Valley Ry. Co. v. Fite (Tex.Civ.App.) 78 S.W.(2d) 714, 717, was a suit brought by Fite and wife against the railway company to recover for personal injuries suffered as a result of their running into a box car standing on the railroad at a point where it crossed the highway near Abilene, Tex. In such case judgment was by the trial court rendered for the plaintiffs, and on appeal to the Eastland Court of Civil Appeals such judgment was reversed and judgment was rendered for the defendant. In that case it was said: "Both the plaintiff Mrs. Artie M. Fite and the driver of the car knew that they were approaching the city of Abilene, and that before entering the city they must cross the railroad. There was no reliance upon any signaling device, cross-arms, or man with a lantern, or anything else to give warning of an actual obstruction of the highway by a train. The evidence shows that the automobile struck the train with such force that it jammed underneath same and could not be moved, except by moving the train and dragging it off the highway."

Again:

" 'A railroad track is of itself a proclamation of danger, imposing upon the traveler at the railroad crossing a positive duty of using care to avoid trains. In approaching such crossing it is his duty to assume a present danger, which includes the immediate approach of a train within a dangerous distance, and the "man who, knowing it to be a railroad crossing, approaches it, is careless unless he approaches it as if it were dangerous." '

"In Gulf, C. & S. F. Ry. Co. v. Gaddis (Tex.Com.App.) 208 S.W. 895, 896, the court said: 'It is well settled in this state that one who crosses a railroad track must, as a matter of law, exercise some degree of care for his own safety.

" 'All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the law will not permit them to go upon the track, even at a public highway, without being charged with a recognition of the danger attending such action and the use

of such care as ordinary prudence would dictate in so doing.' "

I have reached the conclusion, from the reasons stated, that the trial court correctly instructed a verdict for appellee, and thereupon rendered judgment for appellee, and that the majority of this court erred in reversing such judgment and remanding the cause; wherefore I enter this my dissent.